THE STATE OF OHIO, APPELLEE, *v.* MURPHY, APPELLANT.

[Cite as *State v. Murphy* (1992), 65 Ohio St.3d 554.]

(No. 91–1675—Submitted October 20, 1992—Decided December 30, 1992.)

*Jim Slagle,* Prosecuting Attorney, for appellee.

*James Kura,* Ohio Public Defender, *Jane P. Perry* and *Joann M. Bour-Stokes,* Assistant Public Defenders, for appellant.

*Per Curiam.*

I

In his first proposition of law, appellant contends that the prosecuting attorney's cross-examination of Dr. Schmidtgoessling and direct examination of Dr. Sunbury focused upon criteria relevant to the insanity defense rather than those relevant to the mitigating factor described in R.C. 2929.04(B)(3). In particular, appellant maintains that the inquiry and argument of the prosecutor sought to establish in the minds of the jurors a misconception that in mitigation appellant was required to demonstrate the more difficult standard for the insanity defense described in *State v. Staten* (1969), 18 Ohio St.2d 13, 47 O.O.2d 82, 247 N.E.2d 293. We have reviewed the record and conclude that the line of inquiry pursued by the prosecution was directly relevant to the criterion set forth in R.C. 2929.04(B)(3): "Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law." This conclusion is underscored by these remarks of the prosecutor in closing argument:

"[W]hat the law says and what the Judge will instruct you is you may consider it as a mitigating factor if it's proven that at the time of committing the offense on February 1st, 1987, the Defendant, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law."

This is an accurate statement of the law. We are not convinced that isolated references by the prosecutor to conditions associated with insanity and the similarity between the elements of the insanity defense described in *Staten, supra,* and the criteria contained in R.C. 2929.04(B)(3) show that the prosecutor was suggesting to the jury that the two standards are interchangeable. Indeed, the holding in *State v. Rogers* (1985), 17 Ohio St.3d 174, 17 OBR 414, 478 N.E.2d 984, paragraph five of the syllabus, clearly establishes that the trial court is not obligated to instruct on the differences between the two standards where both issues are present in the same case.

Appellant withdrew his plea of not guilty by reason of insanity before trial. Accordingly, there was no occasion for the jury to confuse the two standards. Moreover, unlike the situations presented in *State v. Lawrence* (1989), 44 Ohio St.3d 24, 28, 541 N.E.2d 451, 456, the prosecuting attorney in the present case did not suggest to the members of the jury that an identical analysis is to be employed in resolving the two distinct issues.

That certain characteristics are germane in establishing both conditions does not render evidence of those characteristics inadmissible during a hearing on the mitigating circumstance described in R.C. 2929.04(B)(3). The first proposition of law urged by appellant is not well taken.

## II

In his second proposition of law appellant challenges the independent review conducted by the court of appeals. Specifically, appellant objects to the comparison of himself with others in similar circumstances who nonetheless eschew criminal activity. On this issue, the appellate court remarked:

"Regarding the evidence of duress in support of mitigation factor R.C. 2929.04(B)(2), many people suffer the stresses of infidelity, monetary problems, and family illness without resorting to robbery, burglary, and murder as a solution to these problems. *Additionally, there are many people who grow up with Appellant's background, personality disorders, and I.Q. as presented in support of R.C. 2929.04(B)(7) and these people do not go on to commit aggravated felonies and murder.* There is little in Appellant's circumstances to justify his conduct or decrease his moral culpability for the crimes he committed. When weighed against the aggravating circumstances proven beyond a reasonable doubt, we find all mitigating factors are outweighed." (Emphasis added.)

The analysis employed by the court of appeals is not unlike that employed by this court in *State v. Maurer* (1984), 15 Ohio St.3d 239, 245, 15 OBR 379, 384, 473 N.E.2d 768, 777, and no more objectionable. Such an independent determination, like that conducted in any other context, necessarily requires

the factfinder to draw on its experience in the evaluation of the evidence presented. In the case of a mitigation proceeding, it is essential to determine what weight is to be given the specific circumstances of the defendant. The evaluation of these circumstances necessarily requires a comparison with others similarly situated. The second proposition of law advanced by appellant is therefore overruled.

### III

In his third proposition of law appellant argues that the sentence of death in the present case is unreliable and inappropriate. These contentions are better addressed in the context of our independent review of the aggravating circumstances and mitigating factors.

### IV

In the fourth proposition of law appellant objects that the arguments of counsel on behalf of the state were inflammatory and unsupported by the record. We disagree.

Appellant challenges the description by the prosecuting attorney during the penalty phase of the manner in which Mrs. Predmore was slain. While appellant contends that there was no evidence regarding the precise circumstances of the murder, investigation by the coroner of the knife wound and the pictures thereof are consistent with the description employed by the prosecutor. Clearly, counsel is permitted to argue reasonable inferences from the evidence presented.

Moreover, the argument was directed to the contention of appellant that the act he committed was impulsive. The purpose of the argument was therefore meant to underscore the purposeful nature of appellant's behavior as disclosed by the evidence.

Appellant further contends that the prosecuting attorney "appealed to the jurors to protect society against crime by punishing [him] with the death penalty." This argument mischaracterizes the statement of counsel. Instead, the prosecutor remarked:

"We live in a civilized society. And as part of a civilized society, we cannot tolerate such crimes. I don't particularly enjoy being in a situation of asking you to return a death penalty verdict, but once in a while that's the only thing that's appropriate. That's the only answer."

Thus, the description of the comments of the prosecutor by appellant are an exaggeration. The reference taken as a whole was clearly not directed to the death penalty *per se* but to the need to protect society from violent behavior.

Finally, such remarks, even if interpreted to suggest that the sentence of death is the only method whereby society can be protected, are not improper on that basis alone. In *State v. Beuke* (1988), 38 Ohio St.3d 29, 33, 526 N.E.2d 274, 280, this court observed that comments of this nature "consist of a general discussion of the death penalty, concluding with a specific request that the death penalty be imposed to maintain community standards. As such, the arguments are not constitutionally infirm, cf. *Booth v. Maryland* (1987), 482 U.S. [496, 504], 96 L.Ed.2d 440, 449, 107 S.Ct. 2529, 2533 ('[i]t is the function of the sentencing jury to "express the conscience of the community on the ultimate question of life or death" * * * [citation omitted]') * * *."

Appellant similarly objects to the comparison drawn by the prosecutor between appellant's family situation and that of the brother-in-law of the prosecutor. However, this was a permissible argument to rebut the contention of appellant that his background was responsible for his acts. In short, counsel for the state was merely addressing issues which we have previously observed are a proper subject for consideration by the factfinder in the mitigation proceeding. (See Proposition of Law No. 2, *supra*.)

Finally, appellant objects to the prosecutor's assertions that a custody dispute involving appellant's daughter had as its genesis his physical abuse of the child. Although this assertion was totally unsupported by the record and constituted inappropriate argument on the part of the prosecuting attorney, we conclude that it could not have affected the outcome of the trial. Accordingly, while such remarks were ill-advised and unjustified, we do not believe them to be prejudicial.

Appellant's fourth proposition of law is therefore overruled.

## V

In his fifth proposition of law appellant argues that the statements which he made to law enforcement officers were involuntary. This contention is belied by a review of the circumstances surrounding his interrogation. The transcripts of the interviews reveal that each was preceded by warnings, that knowing and voluntary waivers of his right to counsel and privilege against self-incrimination were obtained and the statements he made were the product of his own free choice. This view is underscored by appellant's exercise of his right to cease the interview and consult an attorney on February 3, 1987, and is further bolstered by the evaluation of Dr. Sunbury that "Joseph Murphy has sufficient intellectual understanding of courtroom proceedings in general, and his own legal difficulties in particular. He also has the ability to cooperate with his attorneys. However, although he is not mentally retarded and he is not psychotic, he does have a character or personality disorder. He

is unreliable and unpredictable and he may not tell his attorneys the whole truth. He has fluctuating internal standards and is manipulative. These behaviors represent Mr. Murphy's personality style and are not treatable as mental illness within any reasonable time period."

Accordingly, we conclude that appellant possessed the intellectual ability to make a voluntary statement. The fifth proposition of law urged by appellant is therefore overruled.

## VI

In his sixth proposition of law appellant challenges the admissibility of the taped interviews on the basis that admission thereof violated his Fifth and Sixth Amendment rights to counsel. We disagree.

On four separate occasions prior to police interrogation appellant was advised of his right to counsel. On two of those occasions it was appellant who initiated the interview and in each instance he executed a waiver form acknowledging his right to counsel but nevertheless freely spoke to the police officers.

In the one situation when appellant asserted his right to counsel, his wishes were respected by the police officers and the interview ceased. The facts of the present case are therefore not unlike the circumstances addressed in *Patterson v. Illinois* (1988), 487 U.S. 285, 293, 108 S.Ct. 2389, 2395, 101 L.Ed.2d 261, 273, wherein the United States Supreme Court observed:

" * * * the Miranda warnings given petitioner made him aware of his right to have counsel present during the questioning. By telling petitioner that he had a right to consult with an attorney, to have a lawyer present while he was questioned, and even to have a lawyer appointed for him if he could not afford to retain one on his own, Officer Gresham and ASA [Assistant State's Attorney] Smith conveyed to petitioner the sum and substance of the rights that the Sixth Amendment provided him. 'Indeed, it seems self-evident that one who is told he' has such rights to counsel 'is in a curious posture to later complain' that his waiver of these rights was unknowing. Cf. *United States v. Washington*, 431 U.S. 181, 188 [97 S.Ct. 1814, 1819, 52 L.Ed.2d 238, 245] (1977). There is little more petitioner could have possibly been told in an effort to satisfy this portion of the waiver inquiry." See, also, *State v. Hooks* (1988), 39 Ohio St.3d 67, 70, 529 N.E.2d 429, 432. We therefore conclude that the sixth proposition of law is without merit.

## VII

In his seventh proposition of law, appellant contends that the trial court erred in permitting the admission of his interview with police officers without

redacting it to delete references to previous crimes committed by him and his remark that he was prepared to submit to a polygraph examination.

Appellant's challenge to references to his prior criminal acts is without merit. The references were similar to those made by counsel for appellant to eight of the eventual jurors during voir dire. Thus, any error in failing to redact the interview was nonprejudicial because counsel for appellant had already apprised members of the jury regarding their substance.

Appellant's challenge to the admission of his statement expressing his willingness to undergo a polygraph examination is likewise without merit. First, appellant failed to object at trial to the admission of his statement relative to the polygraph examination and failed to make it a basis for an assignment of error before the court of appeals. Accordingly, the issue is waived for purpose of our review. *State v. Walker* (1978), 55 Ohio St.2d 208, 9 O.O.3d 152, 378 N.E.2d 1049. Assuming *arguendo* that the issue is preserved for our consideration, it would appear that the reference to the polygraph examination most likely operated to the benefit of appellant despite the questionable merit of the procedure itself. Accordingly, the seventh proposition of law is overruled.

## VIII

In his eighth proposition of law, appellant contends that the jurors were not properly sequestered during the penalty phase and that the unsupervised access afforded jurors to their family members to obtain changes of clothing was, in essence, presumptively prejudicial. We disagree.

R.C. 2945.33 governs the sequestration of jurors during a capital trial. It provides:

"When a cause is finally submitted the jurors must be kept together in a convenient place under the charge of an officer until they agree upon a verdict, or are discharged by the court. The court, except in cases where the offense charged may be punishable by death, may permit the jurors to separate during the adjournment of court overnight, under proper cautions, or under supervision of an officer. Such officer shall not permit a communication to be made to them, nor make any himself except to ask if they have agreed upon a verdict, unless he does so by order of the court. Such officer shall not communicate to any person, before the verdict is delivered, any matter in relation to their deliberation. Upon the trial of any prosecution for misdemeanor, the court may permit the jury to separate during their deliberation, or upon adjournment of the court overnight.

*"In cases where the offense charged may be punished by death, after the case is finally submitted to the jury, the jurors shall be kept in charge of the proper officer and proper arrangements for their care and maintenance shall be made as under section 2945.31 of the Revised Code."* (Emphasis added.)

In *Remmer v. United States* (1954), 347 U.S. 227, 229, 74 S.Ct. 450, 451, 98 L.Ed. 654, 656, the United States Supreme Court observed:

"In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial *about the matter pending before the jury* is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties. The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant. *Mattox v. United States*, 146 U.S. 140 [13 S.Ct. 50, 36 L.Ed. 917]; *Wheaton v. United States*, 8 Cir., 133 F.2d 522, 527." (Emphasis added.)

The presumption of prejudice to which *Remmer, supra,* refers obtains only where communication with the juror concerns "the matter pending before the jury." Thus, it was observed in *State v. Jenkins* (1984), 15 Ohio St.3d 164, 236–237, 15 OBR 311, 373–374, 473 N.E.2d 264, 324:

"To prevail on a claim of prejudice due to an *ex parte* communication between judge and jury, the complaining party must first produce some evidence that a private contact, without full knowledge of the parties, occurred between the judge and jurors which involved substantive matters."

Similarly, where a party alleges prejudice as a result of improper communication between a juror and members of his or her family or members of the public, he must initially demonstrate that such communication was of a substantive nature. In the case at bar, appellant has relied on a mere presumption that communications between jurors and their families in the course of making overnight arrangements during sequestration concerned matters at issue in the present case. No evidence has been proffered by appellant to support the allegation. To the contrary, what inquiry was made of the jurors by the trial court reveals that, to a person, they indicated that no discussion of the case occurred between them and members of their families or the general public. Appellant has therefore failed to demonstrate that any presumptively prejudicial conversations took place. The eighth proposition of law is therefore overruled.

## IX

In his ninth proposition of law appellant contends that the trial court precluded the jury from considering the psychological age of appellant. This argument misstates what transpired at trial. During trial, evidence was adduced regarding the mental capacity of appellant. In the course of their deliberations the jury inquired of the court whether the mitigating factor of youth concerned chronological or psychological age. The court responded that it addressed chronological age. On this basis, appellant argues that the court precluded the jury from considering his diminished mental capacity. The argument of appellant is without merit.

First, the response of the trial court was a correct statement of the law. In *State v. Landrum* (1990), 53 Ohio St.3d 107, 112, 559 N.E.2d 710, 718, the court stated:

" 'The youth of the offender' as used in R.C. 2929.04(B)(4) may refer to chronological age."

Second, the court, by correctly advising the jury regarding the import of the mitigating factor contained in R.C. 2929.04(B)(4), did not preclude the jury from considering the mental state of appellant under either R.C. 2929.04(B)(3) (*i.e.*, mental disease or defect) or R.C. 2929.04(B)(7) (*i.e.*, other factors relevant to the imposition of the death sentence). While the better practice would have been for the trial court to instruct the jury that the psychological age of the appellant could be considered in the context of these other mitigating factors, such a remark would not have been responsive to the specific question posed by the jury.

Inasmuch as the instruction of the court was an accurate statement of the law and did not preclude the jury from considering the mental capacity of appellant in the context of other mitigating factors, the ninth proposition of law is overruled.

## X

In his tenth proposition of law appellant contends that the trial court failed to consider the mitigating evidence adduced on his behalf during the penalty phase of the trial. This argument is without merit. In essence, the objections of appellant are directed to the conclusion of the trial court that the mitigating evidence was unpersuasive. A review of the sentencing opinion reveals that the mitigating evidence presented by appellant was considered but was given little weight.

The analysis conducted by the trial court is therefore wholly consistent with the requirements of R.C. 2929.03. As we observed in *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, paragraph two of the syllabus:

"While R.C. 2929.04(B)(7) evinces the legislature's intent that a defendant in a capital case be given wide latitude to introduce any evidence the defendant considers to be mitigating, this does not mean that the court is necessarily required to accept as mitigating everything offered by the defendant and admitted. The fact that an item of evidence is admissible under R.C. 2929.-04(B)(7) does not automatically mean that it must be given any weight."

Inasmuch as the trial court considered the mitigating evidence adduced by appellant, the tenth proposition of law is overruled.

## XI

In his eleventh proposition of law appellant challenges the instruction given by the trial court relative to jury consideration of mitigating factors. The instruction stated that "[m]itigating factors are factors that[,] while they do not justify or excuse the crime, nevertheless may be considered by you as extenuating or reducing the degree of the Defendant's blame or punishment." Appellant did not object to this instruction during trial. However, defense counsel did request instructions which included the aforementioned language but which also embraced a more detailed and fact-specific charge tailored to appellant's circumstances. The instruction proffered by counsel for appellant was rejected by the trial court. We will therefore proceed on the basis that appellant has preserved this issue for our review.

Appellant contends that the given instruction focuses unduly on culpability and precluded the jury from considering factors such as whether the death sentence is an appropriate penalty. In support of this view appellant cites our decision in *State v. Holloway* (1988), 38 Ohio St.3d 239, 527 N.E.2d 831. The reliance upon *Holloway* by appellant is misplaced. The trial court in *Holloway* limited its consideration to mitigating factors that would reduce the defendant's culpability. No such instruction was given in the case at bar. Instead, the challenged instruction includes as mitigating factors not only those that reduce the degree of blame, but those that reduce the degree of punishment.

Accordingly, the eleventh proposition of law is overruled.

## XII

Appellant contends in his twelfth proposition of law that the jury was improperly permitted to consider duplicative aggravating circumstances inas-

much as the aggravated robbery charged in the first specification and the aggravated burglary charged in the second specification were part and parcel of the same course of conduct. Defense counsel did not object at trial to the submission of both aggravating circumstances to the jury. Irrespective of this deficiency, the proposition of law is rejected on authority of *State v. Barnes* (1986), 25 Ohio St.3d 203, 25 OBR 266, 495 N.E.2d 922. In *Barnes* it was observed: "[T]he facts of this case demonstrate that two separate offenses, aggravated burglary and aggravated robbery, were committed. The crime of aggravated burglary was complete when appellant trespassed into an occupied structure with the intent to commit a theft offense or felony, and threatened to inflict harm on another. See R.C. 2911.11. The distinct offense of aggravated robbery was complete when appellant, while committing a theft offense, inflicted serious physical harm on the victim, to the extent of killing him." *Id.* at 207, 25 OBR at 269, 495 N.E.2d at 925.

The present case is therefore factually indistinguishable from *Barnes* on this issue inasmuch as the statutory elements of the underlying offenses are distinct. The aggravated burglary committed by appellant was complete upon his trespass into the home of the victim, with a deadly weapon, with the purpose to commit a theft offense. See R.C. 2911.11. The aggravated robbery was complete when he committed a theft offense while having a deadly weapon under his control. See R.C. 2911.01. The commission of each offense was not dependent upon commission of the other. Each was therefore sufficient to constitute a separate aggravating circumstance.

Assuming *arguendo* that the specifications were duplicative, any prejudicial effect may be remedied by this court in the course of our independent review of the aggravating circumstances and mitigating factors. *State v. Jenkins* (1984), 15 Ohio St.3d 164, 200, 15 OBR 311, 341–342, 473 N.E.2d 264, 296–297.

Accordingly, the twelfth proposition of law is overruled.

## XIII

In his thirteenth proposition of law appellant challenges the employment of peremptory challenges by the state to remove jurors who expressed reservations about the death penalty. This practice was considered and approved by this court in *State v. Esparza* (1988), 39 Ohio St.3d 8, 529 N.E.2d 192. The thirteenth proposition of law is consequently overruled.

## XIV

In his fourteenth proposition of law appellant questions both the timing and substance of the court's instruction to the jury relative to his unsworn

statement presented in mitigation. In essence, the trial court apprised the jury that appellant was entitled by law to make the statement, that, except for the lack of an oath, the credibility of the appellant was to be evaluated on the same basis as would be applied to any other person providing testimony and that the willingness to take an oath was a factor in assessing the veracity of a witness.

The aforementioned statement is a balanced and accurate statement of the law. Moreover, Crim.R. 30(B) specifically authorizes the trial court to provide a cautionary instruction "at the commencement and during the course of a trial." It was therefore permissible for the court to provide the instruction just before appellant's statement.

Appellant further objects to the reference by the prosecuting attorney during closing argument that appellant was unwilling to take the oath and submit to cross-examination. However, in *State v. DePew* (1988), 38 Ohio St.3d 275, 528 N.E.2d 542, at paragraph two of the syllabus, this court specifically held that:

"Where the defendant chooses to make an unsworn statement in the penalty stage of a capital trial, the prosecution may comment that the defendant's statement has not been made under oath or affirmation, but such comment must be limited to reminding the jury that the defendant's statement was not made under oath, in contrast to the testimony of all other witnesses."

The fourteenth proposition of law is therefore overruled.

## XV

In his fifteenth proposition of law appellant objects to the admission of what he contends are gruesome photographs. The photographs depicting the victim as she was found on her living room floor, while revealing the wound and the presence of some quantities of blood, are not gruesome in nature. The autopsy photograph of the victim with her head tilted back to expose the wound, while gruesome, was both illustrative of the testimony of the pathologist and germane to the manner in which the wound was inflicted. While the angle of the head in the photograph exaggerated the width of the incision, it was adequately established on cross-examination that the positioning of the head and neck of the victim accounted for the exaggeration. The evidence as a whole was therefore not misleading.

Inasmuch as the probative value of the photographs outweighed the danger of prejudice, they were properly admitted. *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768. The fifteenth proposition of law is therefore overruled.

## XVI

Appellant, in his sixteenth proposition of law, contends that the trial court erred in allowing the admission into evidence of the transcripts of the tape recordings of his interview with law enforcement personnel when the tapes had already been admitted. This argument is without merit.

First, appellant failed to request a limiting instruction from the court that the tapes, not the transcripts, were the evidence to be considered by the jury. Therefore, the trial court was not afforded the opportunity to consider the substance of appellant's present argument that the transcripts inaccurately reflect the contents of the tape.

More significantly, appellant did not identify any alleged discrepancies between the tapes and transcripts at trial, nor has appellant done so on appeal. Accordingly, no prejudice has been shown.

The sixteenth proposition of law is overruled.

## XVII

In his seventeenth proposition of law, appellant contends that the trial court erred by permitting a police officer to read from his report rather than testify from memory and that his use of the report was not limited to refreshing his recollection as required by Evid.R. 612. The testimony at issue concerned the officer's investigation at the Lawson's store, the location where the wallet of Mrs. Predmore was found and the address of the appellant. The trial court concluded that these facts were adduced from the memory of the witness as refreshed by his report.

In *Weis v. Weis* (1947), 147 Ohio St. 416, 34 O.O. 350, 72 N.E.2d 245, this court stated in paragraph one of the syllabus:

"The extent to which a witness may refresh his memory from records made by him in the regular course of business lies within the sound discretion of the trial court."

We conclude that the trial court did not abuse its discretion in permitting the police officer to refer to his report to refresh his memory about facts which are, at best, peripheral to the issues at trial. The seventeenth proposition of law is therefore overruled.

## XVIII

In his eighteenth proposition of law, appellant contends that the trial court erred in excusing potential juror Devenis Hall for cause. A review of the voir dire of Hall reveals that he had deep religious and moral objections to

imposition of the death penalty. While such misgivings by themselves would not have disqualified Hall from serving on the jury, his responses to inquiries by counsel and the court reveal that they would have seriously interfered with his ability to consider a death sentence as an appropriate penalty.

As observed by the United States Supreme Court in *Wainwright v. Witt* (1985), 469 U.S. 412, 420, 105 S.Ct. 844, 850, 83 L.Ed.2d 841, 849: " '[A] juror may not be challenged for cause based on his views about capital punishment *unless those views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.* The State may insist, however, that jurors will consider and decide the facts impartially and conscientiously apply the law as charged by the court.' [*Adams v. Texas* (1980), 448 U.S. 38] at 45 [100 S.Ct. 2521 at 2526, 65 L.Ed.2d 581 at 589] (emphasis added)." See, also, *State v. Tyler* (1990), 50 Ohio St.3d 24, 553 N.E.2d 576.

The eighteenth proposition of law is overruled.

## XIX

In his nineteenth proposition of law appellant maintains that the admission of both physical evidence and photographs thereof was cumulative and irrelevant. We disagree.

Appellant specifically objects to photographs of articles of clothing belonging to him, the purse of Mrs. Predmore, and penny wrappers, in addition to the items themselves. While Evid.R. 403(B) allows the discretionary exclusion of evidence if it is cumulative, appellant has failed to demonstrate that the trial court abused its discretion by failing to exclude the photographs. In *State v. Morales* (1987), 32 Ohio St.3d 252, 257, 513 N.E.2d 267, 273, this court remarked:

"A trial court may reject an otherwise admissible photograph which, because of its inflammatory nature, creates a danger of prejudicial impact that substantially outweighs the probative value of the photograph as evidence. Absent such danger, the photograph is admissible."

The photographs at issue merely depict the items admitted into evidence at the location where they were found. They are not inflammatory in nature but support the testimony of the police officer who discovered them regarding where the items were located.

The nineteenth proposition of law is therefore overruled.

## XX

Appellant contends in his twentieth proposition of law that the trial court erred in the admission of psychological reports containing references to the uncharged theft offense. At trial, appellant did not challenge the report on this basis. Inasmuch as the issue was not preserved by a timely objection below, it is waived for purposes of our review. See *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364. Assuming that appellant has adequately preserved the issue for our consideration, the reference to one offense in psychological reports which would nevertheless have been subsumed in the more serious offenses included in the indictment and properly referred to by Dr. Sunbury in his report can hardly be considered prejudicial in nature.

The twentieth proposition of law is therefore overruled.

## XXI

In his twenty-first proposition of law appellant challenges the standard of reasonable doubt contained in R.C. 2901.05 and the jury instruction based thereon. In particular, appellant claims that the statutory definition merely requires clear and convincing evidence rather than that sufficient to prove his guilt and establish his sentence beyond a reasonable doubt.

The twenty-first proposition of law is overruled on authority of *State v. Nabozny* (1978), 54 Ohio St.2d 195, 8 O.O.3d 181, 375 N.E.2d 784.

## XXII

In his twenty-second proposition of law, appellant contends that the trial court erred in permitting an unrecorded jury view of his home, the home of Mrs. Predmore and the alley behind the two residences. This omission, appellant maintains, deprived him of a complete record of the trial. However, appellant did not request that a record be made of the proceeding nor has he identified anything that transpired during the jury view which affected his ability to obtain a fair trial.

Moreover, appellant has failed to utilize App.R. 9(E) to preserve for appellate review what he believes was improper or prejudicial to his case.

Accordingly, this proposition of law is overruled.

## XXIII

In his twenty-third proposition of law appellant challenges the constitutionality of the capital sentencing scheme in Ohio, on the basis that it requires the

death penalty if aggravating circumstances outweigh the mitigating factors, with no option for mercy. This proposition of law is overruled on authority of *State v. Jenkins, supra.*

## XXIV

In his twenty-fourth proposition of law appellant contends that the indictment failed to identify the elements of the offenses underlying each of the charged crimes. In particular, appellant maintains that the indictment fails to identify the precise type of conduct by which he violated (1) R.C. 2911.01 (aggravated robbery), the offense underlying the charge of aggravated murder and the first specification to it, and (2) R.C. 2911.11 (aggravated burglary), the offense underlying the second specification. He also maintains that the second, third and fourth counts did not name the offenses they charged (robbery, burglary and extortion). He therefore contends that the indictment did not provide him with adequate notice of the charges against which he must defend. This argument must be rejected for two reasons. First, appellant received a bill of particulars which supplied much of the information he now claims he lacked. Second, this court has previously held, in *State v. Landrum* (1990), 53 Ohio St.3d 107, 119, 559 N.E.2d 710, 724, that Crim.R. 7(B) authorizes indictments to utilize the words of the applicable section of the statute. The indictment in the case at bar tracks the wording of R.C. 2929.04(A)(7), 2903.01(B), 2911.01(A)(1), 2911.11(A)(3) and 2905.11(A)(2).

Accordingly, the twenty-fourth proposition of law is overruled.

## XXV

In his twenty-fifth proposition of law, appellant challenges the constitutionality of the proportionality review provided in R.C. 2929.05. The basis for the challenge is that appellate review of proportionality is limited only to other cases where the death sentence was imposed. This proposition of law is rejected on authority of *State v. Steffen, supra,* and *State v. Davis* (1991), 62 Ohio St.3d 326, 351, 581 N.E.2d 1362, 1382.

## XXVI

In his twenty-sixth proposition of law appellant challenges the constitutionality of the Ohio death penalty statute on various additional grounds. These challenges were considered and rejected in *State v. Jenkins, supra,* and *State v. Buell* (1986), 22 Ohio St.3d 124, 22 OBR 203, 489 N.E.2d 795.

## XXVII

Appellant has filed a supplemental proposition of law on the basis that the jury did not explicitly find that he was "the principal offender in the commission of the aggravated murder or, if not the principal offender, [that he] committed the aggravated murder with prior calculation and design," as required by R.C. 2929.04(A)(7). The memorandum in support of the supplemental proposition of law filed on October 13, 1992, acknowledges that this issue was not the subject of an objection at trial, was not presented to the court of appeals and was not raised in a timely fashion before this court. It is therefore waived for purposes of our review. Nevertheless, appellant urges this court to consider the issue under the plain error doctrine. We will do so, see *State v. Sneed* (1992), 63 Ohio St.3d 3, 10, 584 N.E.2d 1160, 1167, but we nonetheless reject the substance of the argument.

Appellant contends that the omission of the principal offender language from the verdict form shows that there was no jury finding on this issue as required by R.C. 2929.04(A)(7). This argument is rejected for two reasons. As an initial matter, the jury was specifically instructed that it could not return a verdict of guilty on the specifications contained in the indictment unless it determined that appellant was the principal offender. A presumption exists that the jury has followed the instructions given to it by the trial court. See *State v. Fox* (1938), 133 Ohio St. 154, 10 O.O. 218, 12 N.E.2d 413, and *Browning v. State* (1929), 120 Ohio St. 62, 165 N.E. 566.

Secondly, the contention of appellant that he was not the principal offender is at variance with the evidence presented at trial. The notion that someone other than appellant was the perpetrator of the aggravated murder of Mrs. Predmore rests exclusively upon the bald assertion of appellant that his brother-in-law Alvie Coykendall committed the crime. There is not a scintilla of evidence supporting this theory of the case. Rather, all of the evidence points to appellant as solely responsible for the murder. Accordingly, there is no basis upon which to conclude that the jury did not find that appellant was the principal offender in the present case. See *State v. Bonnell* (1991), 61 Ohio St.3d 179, 184, 573 N.E.2d 1082, 1087. The supplemental proposition of law is therefore overruled.

## XXVIII

In accordance with R.C. 2929.05(A), this court is obligated to conduct an independent review to determine whether the aggravating circumstances presented by the state outweigh the mitigating factors adduced by appellant.

Appellant was found guilty as the principal offender in an aggravated murder committed in the course of the commission of an aggravated robbery and in the course of the commission of an aggravated burglary in violation of R.C. 2929.04(A)(7). The commission of either of the underlying felonies was sufficient to permit the imposition of a sentence of death upon appellant as the principal offender.

Appellant submitted mitigating evidence pursuant to R.C. 2929.04(B)(2), (3), (4) and (7). These subsections require consideration of whether appellant was under duress at the time of the commission of the offense, whether appellant was suffering from a mental disease or defect at the time of the commission of the offense, the youth of appellant and other factors relevant to the imposition of the sentence of death.

It is undisputed that the mental capacity of appellant places him in the lowest six or seven percent of the population. Appellant was born into an impoverished background, had an alcoholic father, was the victim of verbal, physical and sexual abuse as a child and was generally maladjusted throughout his life. He was generally isolated from other members of his family and was often the brunt of taunting by his parents and siblings. He was also relatively young at the time of the commission of the offense.

While these family circumstances are indeed tragic, they are nevertheless outweighed by the aggravating circumstances presented by the instant case. Appellant had indeed experienced some family difficulties shortly before the commission of the aggravated murder, including the serious injury of his sister and the alleged infidelity of his girlfriend. However, neither of these circumstances constitutes duress as required by R.C. 2929.04(B)(2). Nor does appellant's low intelligence quotient establish that he suffered from a mental disease or defect which deprived him of substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. See R.C. 2929.04(B)(3). While there was expert testimony that the mental condition of appellant led to rash and impulsive behavior and that such behavior explains his actions with respect to Mrs. Predmore, such a conclusion is contradicted by the circumstances surrounding the crime. Appellant and Mrs. Predmore were acquainted. He had performed yardwork for her in the past. His extortion note demanding money and his entry into her home with a knife reveal that the crime was planned and that the motivation of appellant was financial in nature. It was not the product of an impulsive act.

While appellant was relatively young (twenty-one years, ten months, at the time of the offense), he was of sufficient maturity to appreciate the gravity of his conduct.

His family circumstances are certainly sufficient to establish a mitigating factor under R.C. 2929.04(B)(7). However, these circumstances, while at times unsettling, fail to overcome the aggravating circumstances in the present case.

Accordingly, we conclude that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt.

## XXIX

This court is also required, by R.C. 2929.05(A), to determine whether the sentence of death imposed is appropriate in view of our disposition of other capital cases involving similar circumstances. We conclude that the sentence is appropriate in this case, as it is neither excessive nor disproportionate. We have approved the death sentence in cases involving murders committed in the course of an aggravated robbery, *State v. Hooks* (1988), 39 Ohio St.3d 67, 529 N.E.2d 429; *State v. Jenkins, supra; State v. Williams* (1986), 23 Ohio St.3d 16, 23 OBR 13, 490 N.E.2d 906; *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523; and aggravated burglary, *State v. Hooks, supra; State v. Wiles* (1991), 59 Ohio St.3d 71, 571 N.E.2d 97; *State v. Henderson* (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237; *State v. Holloway* (1988), 38 Ohio St.3d 239, 527 N.E.2d 831; *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 514 N.E.2d 394; *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383; and *State v. Barnes* (1986), 25 Ohio St.3d 203, 25 OBR 266, 495 N.E.2d 922.

We therefore conclude that the death sentence is neither excessive nor disproportionate in the case *sub judice*.

Accordingly, the judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

SWEENEY, HOLMES, DOUGLAS and RESNICK, JJ., concur.

MOYER, C.J., WRIGHT and H. BROWN, JJ., dissent.

MOYER, C.J., dissenting. For the reasons that follow, I would reverse the sentence of death. I therefore must respectfully dissent from the opinion of the majority.

Pursuant to R.C. 2929.05, we must review proposed errors, weigh aggravating circumstances against mitigating factors, and compare the sentence to those imposed in similar cases. Because I believe the aggravating circumstances do not outweigh the mitigating factors, I would vacate the sentence of death.

R.C. 2929.04(B)(7) requires consideration of "[a]ny other factors that are relevant to the issue of whether the offender should be sentenced to death."

My consideration of defendant's age of twenty-one years and ten months at the time of the crime and the conditions created for him by his family causes me to conclude that defendant should not be sentenced to death.

The majority acknowledges that defendant was born into an impoverished background, had an alcoholic father, was the victim of verbal, physical, and sexual abuse as a child, and was generally maladjusted throughout his life. He was generally isolated from other members of his family and was often the brunt of taunting by his parents and siblings.

That description of defendant's life is accurate but not complete. In fact, in all of the death penalty cases I have reviewed, I know of no other case in which the defendant, clearly guilty of the crime as defendant is here, was as destined for disaster as was Joseph Murphy as a direct result of the conditions to which he was exposed by his family.

Testimony adduced at trial revealed appellant lived in desperate poverty with an unloving, unsupportive and abusive family. Appellant was raised in a home in West Virginia that family members described as a "shack." The home had no hot water or plumbing. The family received public assistance and the father was an alcoholic.

From an early age, appellant's troubles were compounded. When he began school, he was diagnosed as hyperactive. Although he attended school, his antisocial behavior was a constant problem and he was not able to attain an education beyond the third-grade level. His behavior included vandalism, setting fires, and an inability to interact in a normal way with other children. Repeated attempts at home tutoring and institutionalization proved unsuccessful.

There can be little question that defendant's behavior was in large measure a direct result of treatment by his family. Testimony of family members illustrates an environment of neglect, physical abuse and psychological torment. Dinner would often not be provided to him, and appellant was forced to go to family friends for food. He started numerous fires in his home. Once, when he was an infant, he was left in their burning house while the rest of the family sought safety.

Further evidence from family members showed a history of beatings by appellant's mother. In appellant's unsworn statement, he alleged that he would be punished and beaten for the misbehavior of his brothers. He stated he would have to wear long pants and long-sleeve shirts to hide his bruises when visitors came to the family home.

Appellant also alleged sexual abuse as a child by family friends and staff members at two institutions.

Psychological testimony established that appellant suffers from a personality disorder that is "severe, chronic and disabling" and "impairs him in a variety of areas of his psychological and social functioning." An evaluation found his emotional age to be equivalent to that of a five- or six-year-old child. His intelligence has been determined to be in the bottom six to seven percent of the population.

Evidence also revealed that appellant's upbringing has resulted in destructive behavior and a profound ambivalence toward others. "He is motivated by very primitive feelings of rage, which have their origin in an extremely chaotic, dysfunctional family. His father was both mentally ill and a substance abuser and his mother was a dependent, ineffective, rejecting figure. He was often scapegoated in the family and punished abusively." He was never provided the intense treatment, such as daily psychotherapy in a stable setting, that was necessary to foster normal development.

Dr. Schmidtgoessling testified that defendant was the family scapegoat. She defined the phenomenon as follows: "Scapegoat theory basically is a theory about family functioning, and the scapegoat is the person in the family that all the problems get sort of dumped on." This results when a troubled family is unable to resolve its problems and one member of the family is singled out for blame, not only for problems caused by the scapegoat, but for problems caused by other family members. "[C]onsequently in times of family tension, the energy level or the balance of that family is often kept even by the scapegoat acting out, doing all sorts of inappropriate behavior, going on spending sprees, physically acting out, becoming sick * * *."

Appellant committed a heinous crime. His youth, standing alone, would not be sufficient mitigation to overturn the trial court's sentence of death. However, defendant is a person who, because of his family conditions, had virtually no chance in life. The crime was committed, not after defendant had matured to an age when education, normal life experiences, and maturity could have intervened, but so soon after the brutally abusive conditions created by his family that I am compelled to find that the death sentence is not appropriate for defendant in this case. This case is not similar to *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768, as suggested by the state. In *Maurer*, the defendant had served in the Marine Corps, been in prison, "successfully completed" a program for recovering alcoholics, and was married and lived with his wife and four stepchildren. Maurer had clearly made life choices as an adult before committing murder. In describing the conditions under which defendant lived in *Maurer*, this court did not even discuss his early life. We stated the following:

"The types of circumstances under which appellant was living, *i.e.*, alcohol problems, loss of job, etc., are the sort that numerous people live under without turning to criminal conduct, much less the serious crime that appellant was convicted of here. Moreover, appellant, unlike many others with similar problems, was given the opportunity for rehabilitation at Newton House and the Community Treatment and Correction Center, and, despite this help, continued on a path of conduct which led to this offense." *Id.* at 245, 15 OBR at 384, 473 N.E.2d at 777.

Those words hardly describe the conditions under which defendant lived. Because I believe the aggravating circumstances do not outweigh the mitigating factors, I would reverse the death penalty.

WRIGHT and H. BROWN, JJ., concur in the foregoing dissenting opinion.