[Cite as *State v. Carlson*, 2022-Ohio-4548.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-43 |
| | : | |
| v. | : | Trial Court Case No. 2021-CR-132 |
| | : | |
| JAMES ROBERT CLIFFORD | : | (Criminal Appeal from |
| CARLSON | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 16th day of December, 2022.

. . . . . . . . . . .

ELIZABETH HANNING SMITH, Atty. Reg. No. 0076701, Assistant Prosecuting Attorney, Champaign County Prosecutor's Office, Appellate Division, 200 North Main Street, Urbana, Ohio 43078
      Attorney for Plaintiff-Appellee

CHRISTOPHER BAZELEY, Atty. Reg. No. 0077473, 9200 Montgomery Road, Suite 8A, Cincinnati, Ohio 45242
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant James Robert Clifford Carlson appeals from his conviction for possession of a fentanyl-related compound. For the following reasons, the judgment of the trial court is affirmed.

## I. Procedural History and Facts

{¶ 2} On July 7, 2021, Carlson was indicted on one count of possession of a fentanyl-related compound, in violation of R.C. 2925.11(A), a felony of the fifth degree. The case proceeded to a two-day jury trial beginning on October 5, 2021.

{¶ 3} The evidence at trial established that on May 26, 2021, corrections officers at the Tri-County Regional Jail in Champaign County responded to an incident in the inmate worker pod bathroom. Carlson was discovered inside a bathroom stall sitting on the floor, unresponsive and with his pants and underwear pulled down. Two nurses responded and observed that Carlson's skin was tinted blue, he was not breathing, and was sweaty. Based on Carlson's condition, the nurses determined that Carlson was suffering from a drug overdose. As a result, they administered Narcan to Carlson three times before he became responsive. Narcan, which only works on opiates, is an opiate antagonist that reverses the effects of opiates in the body and the opiate receptors. Fentanyl is an opiate.

{¶ 4} When Carlson came to, he attempted to pull up his pants. In the process of assisting Carlson, one of the nurses observed a small, clear plastic bag with a piece of paper and some white powder in it stuck to Carlson's leg where the waistband of his boxers had been. It was later discovered that inside the folded paper was aluminum foil that contained additional white powder. The bag fell to the floor and was recovered by

a nurse, who turned it over to a corrections officer. When asked what he took, Carlson stated that he did not know what it was, but that he found the drugs on the bathroom floor and orally ingested them. The evidence was photographed, sealed, labeled, and turned over to Deputy Josh Thomas from the Champaign County Sheriff's Office. The white powder was later determined to be a fentanyl-related compound, a Schedule II controlled substance. It contained no other controlled substance.

{¶ 5} After the incident at the jail, Carlson was taken by ambulance to a local hospital where Deputy Thomas interviewed him. Deputy Thomas testified that after Carlson was *Mirandized*, the following discussion occurred:

[Deputy Thomas]: I simply asked him what happened. He stated, "I don't know. I picked up a baggie off the floor and ate it." When I asked him what it was, he told me, "I don't know. It ended up being an opiate of some kind." When I asked him why he picked up something off the floor and ate it, he stated, "I don't know. I'm a drug addict."

I also asked Mr. Carlson why he was currently being held in the Tri-County Regional Jail.

[Defense counsel]: Objection.

The Court: Sustained.

[Prosecutor]: He told you that he picked it up off the floor?

[Deputy Thomas]: Yes, ma'am.

[Prosecutor]: And how did he – What did he say he did with it when he picked it up off the floor?

[Deputy Thomas]:   He told me he ate it.

[Prosecutor]:   Did he tell you he knew it was drugs?

[Deputy Thomas]:   No, not directly.

[Prosecutor]: Okay.   But he said it was some kind of opiate?

[Deputy Thomas]:   When I asked him what it was, he stated, "I don't know. It was an opiate of some kind."   It ended up being an opiate of some kind.

[Prosecutor]:   That was a statement Mr. Carlson made?

[Deputy Thomas]:   Yes.

[Prosecutor]:   Did you request that Mr. Carlson complete a statement?

[Defense counsel]:   Objection.

Trial Tr., p. 212-213.

{¶ 6} The jury was removed from the courtroom and a discussion was held on the record.   Initially, the trial court instructed the prosecutor not to go into whether Carlson had made a written statement or the reason for Carlson's being in jail in the first place. Thereafter, defense counsel requested a mistrial, in part based on Deputy Thomas' testimony regarding Carlson's admission that he was a drug addict.   The trial court denied the request for a mistrial and decided to offer a curative instruction as to the drug addict testimony.   After the jury returned, the trial court provided the following instruction:

The Court:   * * * You may recall during the testimony of Deputy Thomas, he testified that he asked the Defendant, "Why did you do that?" meaning, why did you pick up the baggie, and the Defendant said, "I don't know. Because I'm a drug addict."

The Court would instruct you that evidence was received about the commission of other acts other than the offenses with which the Defendant is charged in this trial. Specifically, Defendant's self-admitted drug addiction. That evidence was received only for the limited purpose of proving motive. You may consider evidence of Defendant's self-admitted drug addiction that shows motive that the accused had a specific reason to commit the offense charged in this trial.

That evidence cannot be considered for any other purpose. It was not received and you may not consider it to prove the character of the defendant in order to show that he acted in conformity with that character. It does not follow from the Defendant's past acts that he committed the particular crime charged in this case.

The State has the burden of proving each element of the particular crime currently at trial beyond a reasonable doubt. The State cannot satisfy its burden merely by implying that the Defendant committed this crime because his other acts suggest a propensity to commit crimes. So you are instructed to follow that order. * * *

Trial Tr., p. 224.

{¶ 7} Carlson did not testify at trial or present any evidence in his defense. The jury found Carlson guilty as charged in the indictment. He was sentenced to community control sanctions and filed a timely notice of appeal.

{¶ 8} Carlson's first appointed appellate counsel filed a brief pursuant to *Anders v.*

*California*, 386 U.S. 738, 87 S.Ct. 1396, 19 L.Ed.2d 493 (1967), asserting the absence of non-frivolous issues for our review. Carlson was advised of the *Anders* filing and was provided an opportunity to submit his own brief. He did not do so. In conducting an independent review of the record, we found at least one non-frivolous issue for appeal. The issue identified concerned the trial court's admission of testimony about Carlson's being a "drug addict." Accordingly, we set aside the *Anders* brief and appointed new counsel to address that issue and any other issues that counsel might uncover. Carlson now raises a single assignment of error.

### II. Prior Acts Evidence

{¶ 9} In his sole assignment of error, Carlson contends that the trial court abused its discretion in allowing prejudicial prior acts evidence to go to the jury. Specifically, he contends that Deputy Thomas's testimony regarding Carlson's admission that he was a drug addict was erroneously admitted for the limited purpose of establishing motive pursuant to Evid.R. 404(B). While we agree that the evidence should not have been admitted under Evid.R. 404(B) to establish motive, we find that the error was harmless.

{¶ 10} We first consider our standard of review. Carlson did not object to Deputy Thomas's testimony as to Carlson's admission that he was a drug addict. Rather, an objection came moments later to a question about why Carlson was in jail in the first place, which was sustained. Deputy Thomas's testimony continued until another objection occurred, at which point a discussion was held outside the hearing of the jury. During the discussion, Carlson again did not object to Deputy Thomas' testimony but instead requested a mistrial, in part based on Deputy Thomas's testimony of Carlson's

admission that he was a drug addict. The only explanation given for why that testimony should result in a mistrial was "to preserve [Carlson's] rights if he were to be convicted." Trial Tr., p. 217. The trial court denied the mistrial and provided a curative instruction regarding the testimony that Carlson had admitted he was a drug addict. Under these circumstances, Carlson's request for a mistrial was not the equivalent of a timely objection to the admission of evidence. *See* Evid.R. 103(A) (failure to timely object and state the specific grounds for that objection precludes a claim of error predicated upon the admissibility of that evidence). Carlson's failure to object to Deputy Thomas's testimony when the other acts evidence was admitted has waived all but plain error. *State v. Hare*, 2018-Ohio-765, 108 N.E.3d 172, ¶ 41 (2d Dist.).

{¶ 11} Pursuant to Crim.R. 52(B), plain error may be noticed on appeal even though it was not brought to the attention of the trial court if the error affects substantial rights, meaning that the error affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 12} "Evid.R. 404(B) categorically prohibits evidence of a defendant's other acts when its only value is to show that the defendant has the character or propensity to commit a crime." *State v. Smith*, 162 Ohio St.3d 353, 2020-Ohio-4441, 165 N.E.3d 1123, ¶ 36. Nevertheless, evidence of a defendant's other crimes, wrongs, or acts may be admitted for other purposes, "such as proving motive, opportunity, intent, preparation,

plan, knowledge, identity, absence of mistake, or lack of accident." Evid.R. 404(B)(2). "The key is that the evidence must prove something other than the defendant's disposition to commit certain acts. Thus, while evidence showing the defendant's character or propensity to commit crimes or acts is forbidden, evidence of other acts is admissible when the evidence is probative of a separate, nonpropensity-based issue." *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22.

{¶ 13} The Supreme Court of Ohio has put forth a three-step analysis for a trial court to use in determining the admissibility of other acts evidence. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20. "The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *Id.*, citing Evid.R. 401. Next, the trial court must determine "whether the evidence is presented to prove a person's character to show conduct in conformity therewith or whether it is presented for a legitimate other purpose." *State v. Tench*, 156 Ohio St.3d 85, 2018-Ohio-5205, 123 N.E.3d 955, ¶ 139. "The nonpropensity purpose for which the evidence is offered must go to a 'material' issue that is actually in dispute between the parties." *Hartman* at ¶ 27, citing *Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). Finally, the last step is "to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice." *Williams* at ¶ 20.

{¶ 14} "The admissibility of other-acts evidence pursuant to Evid.R. 404(B) is a question of law. The court is precluded from admitting improper character evidence

under Evid.R. 404(B), but it has discretion to allow other-acts evidence that is admissible for a permissible purpose." (Citation omitted.) *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700, 172 N.E.3d 841, ¶ 72, citing *Hartman* at ¶ 22, citing *Williams* at ¶ 17.

**{¶ 15}** Carlson was charged with one count of possession of a fentanyl-related compound, in violation of R.C. 2925.11(A). Thus, the State was required to prove that Carlson did knowingly obtain, possess, or use a controlled substance or a controlled substance analog and that the drug involved in the violation was a fentanyl-related compound. The evidence produced at trial revealed that Carlson had been found alone and unresponsive, having overdosed on an opiate drug on the bathroom floor of his jail cell. After being revived with three doses of Narcan, a clear plastic bag was found stuck to his leg near the waistband of his boxer shorts. Inside the plastic bag was a folded-up piece of paper that contained foil in which the fentanyl was located. There was no dispute that the fentanyl was confiscated within Carlson's immediate physical possession and control.

**{¶ 16}** While the State was not required to prove that Carlson knew the specific characteristics of the drugs he possessed, i.e., whether the drugs contained fentanyl, the State was required to demonstrate that Carlson knew or was probably aware that the item contained a controlled substance. *State v. Williams*, 2d Dist. Montgomery No. 20271, 2005-Ohio-1597, ¶ 34. Carlson's defense at trial was that he did not knowingly possess the drugs because he did not know the baggie had contained drugs inside and he had accidentally inhaled the fentanyl, which resulted in his overdosing. Thus, the only essential element of the offense in dispute at trial was whether Carlson had committed

the offense "knowingly."

{¶ 17} "Knowingly" is an essential element of possession of drugs that the State is required to prove beyond a reasonable doubt. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). "[W]hether a person * * * knowingly possessed, obtained, or used a controlled substance is to be determined from all the attendant facts and circumstances available." *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998).

{¶ 18} The question in this case is whether Carlson's admission that he was a drug addict in response to Deputy Thomas' question of why he picked something up off the floor and ate it was admissible to prove motive. Evidence of drug addiction or abuse is admissible under Evid.R. 404(B) if relevant to a noncharacter issue, such as a possible motive. *State v. Tibbetts*, 92 Ohio St.3d 146, 161, 749 N.E.2d 226 (2001), citing *State v. Henness*, 79 Ohio St.3d 53, 61, 679 N.E.2d 686 (1997). "Since it is assumed that human conduct is prompted by a desire to achieve a specific result, the question of motive is generally relevant in all criminal trials, even though the prosecution need not prove motive in order to secure a conviction." *State v. Curry*, 43 Ohio St.2d 66, 70-71, 330 N.E.2d 720 (1975). However, where there is no motive beyond that implicit in the commission of the offense itself, then the other acts evidence is not admissible for the purpose of establishing motive. *Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, at ¶ 49-50. Carlson's motive for picking up drugs and eating them was

obvious based on the evidence introduced at trial such that motive was not a material issue in dispute. *See Curry* at 71. Therefore, Carlson's admission should not have been admitted for the purpose of establishing his motive.

{¶ 19} However, that is not to say that Carlson's admission could not be admissible for other permissible purposes. Carlson's reason for picking up and consuming the drugs indicated that he either knew what the substance was or that there was a high probability that he knew it would be an illicit substance. Thus, his admission tended to establish knowledge, a material element that was at issue at trial. We also note that Carlson's admission was an admission by a party-opponent directly related to the charged offense and would be considered both relevant and admissible under Evid.R. 801(D)(2)(a). *Hare*, 2018-Ohio-765, 108 N.E.3d 172, at ¶ 48.

{¶ 20} While Carlson's drug addiction may have been admissible to prove knowledge, a permissible exception under Evid.R. 404(B), unfortunately, the trial court foreclosed that possibility by instructing the jury that it could consider his addiction to prove motive and for no other purpose. Trial courts are expected to tailor their Evid.R. 404(B) instructions to the particular permissible uses relevant to the case. *Smith*, 162 Ohio St.3d 353, 2020-Ohio-4441, 165 N.E.3d 1123, at ¶ 50, citing *Hartman* at ¶ 70. This undoubtedly means that the instruction should be given as to the *correct* permissible use. Because the trial court's instruction did not permit the jury to consider the evidence for a permissible purpose, the evidence was admitted for an improper purpose.

{¶ 21} Nonetheless, even though the trial court erroneously admitted Carlson's statement as evidence only of motive, the trial court's error was ultimately harmless for at

least two reasons. First, Carlson has not demonstrated prejudice. "[T]he real issue when Evid.R. 404(B) evidence is improperly admitted at trial is whether a defendant has suffered any prejudice as a result. If not, the error may be disregarded as harmless error." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 25. After the evidence was admitted, and again during jury instructions, the trial court directed the jury not to consider the evidence as propensity evidence. There is a presumption "that the jury has followed the instructions given to it by the trial court." *State v. Murphy*, 65 Ohio St.3d 554, 584, 605 N.E.2d 884 (1992). Consequently, the limiting instruction prevented any danger that the jury would unfairly consider the other acts evidence as proof of Carlson's bad character or that he had acted in conformity therewith. There was also no prejudice considering that the evidence could have been admissible for other purposes.

{¶ 22} Secondly, the evidence of Carlson's guilt was overwhelming. "Error in the admission of other act testimony is harmless when there is no reasonable possibility that the testimony contributed to the accused's conviction." *State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976), paragraph three of the syllabus, *vacated on other grounds in Lytle v. Ohio*, 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978). The uncontroverted evidence at trial established that Carlson knowingly possessed fentanyl. Carlson was found overdosing on opioids on the floor of his jail cell bathroom. Fentanyl was found on his person bundled in a manner consistent with how illicit drugs are commonly packaged. Carlson admitted to not only the nurses but also separately to Deputy Thomas that he had found the drugs on the floor, picked them up, and orally ingested them. Thus, even

excluding Carlson's admission that he had committed the offense because he was a drug addict, the evidence established his guilt beyond a reasonable doubt. Accordingly, Carlson's assignment of error is overruled.

### III. Conclusion

{¶ 23} Having overruled Carlson's sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, J., concurs.

DONOVAN, J., concurs in judgment only.

Copies sent to:

Elizabeth Hanning Smith
Christopher Bazeley
Hon. Nick A. Selvaggio