OPINION
Arnold J. Nichols, defendant-appellant, appeals his convictions entered upon a jury verdict in the Franklin County Court of Common Pleas for two counts of aggravated robbery, a violation of R.C. 2911.01; one count of attempted murder, a violation of R.C. 2903.02 and 2923.02; and one count of felonious assault, a violation of R.C. 2903.11. The court also found appellant guilty for having a weapon while under disability, a violation of R.C. 2923.13.
On November 28, 1993, two armed robberies took place within thirty minutes of each other and approximately two miles apart. See State v. Nichols (1996), 116 Ohio App.3d 759, 761;State v. Nichols (May 5, 1998), Franklin App. No. 97APA09-1162, unreported. The first robbery occurred at 2401 Northglen Avenue and the second robbery occurred two miles away at 3096 Dresden Street. In the Dresden Street robbery, David Parker was shot in the neck by the robber after Parker pulled into the driveway of his home. As a result of the shooting, Parker was paralyzed from the neck down. The robbery was also witnessed by Parker's fiancée Angela Josche who was sitting in the passenger seat of Parker's car at the time of the shooting. Since the robber was standing next to the driver's side of the car, Josche was unable to see the face of the robber.
On August 31, 1995, appellant was indicted by a grand jury for two counts of aggravated robbery, one count of attempted murder, one count of felonious assault, and one count of having a weapon while under disability. All of the charges were related to the Parker robbery. Appellant was tried before a jury in January 1996, and was found guilty on all five counts of the indictment. On December 19, 1996, we reversed appellant's convictions finding that his trial counsel's "errors were serious, so serious that he was not functioning as the counsel guaranteed by theSixth Amendment." Nichols, 116 Ohio App.3d at 767.
On remand, appellant was again tried before a jury. During the trial, several individuals testified concerning the details of the Northglen Avenue robbery and the similarities between it and the Dresden Street robbery. Appellant had not been implicated or charged with committing the Northglen Avenue robbery. The jury returned guilty verdicts for four counts of the indictment, and the court found appellant guilty of having a weapon while under disability. On appeal, appellant argued that he was unfairly prejudiced as a result of testimony placed before the jury, which impermissibly associated him with uncharged crimes and persons convicted of criminal offenses. On May 5, 1998, we reversed appellant's convictions finding that the evidence was inadmissible and that the probative value of that evidence was substantially outweighed by its prejudicial impact. Nichols, Franklin App. No. 97APA09-1162.
On remand, appellant was tried for a third time before a jury. During the trial, no evidence was presented linking the two robberies and the trial instead concentrated on the Dresden Street robbery. Parker testified that shortly after he pulled into his driveway on Dresden Street, his driver's side door opened and someone put a gun to his neck. Parker stated that the person told him to give him his wallet. After Parker told him that he did not have his wallet, the robber said several times "[s]top f___ing with me or I'll blow your f___ing head off." After Josche gave Parker some money, he stated that he glanced forward and saw his roommate talking on the telephone inside his house. Parker further testified that the robber then told him "[t]ell him to get off the f___ing phone" which was immediately followed by a "pop." Josche testified that after the robber shot Parker in the neck at point blank range, the robber ran away. Parker identified appellant to be the robber and testified that he "didn't have any — any doubts whatsoever" that appellant was the robber.
On August 30, 1999, the jury returned guilty verdicts for four counts of the indictment, and the court found appellant guilty for having a weapon while under disability. For the purposes of sentencing, the court merged the attempted murder and felonious assault convictions. The court sentenced appellant to serve ten to twenty-five years in prison for his aggravated robbery convictions, ten to twenty-five years for the merged attempted murder and felonious assault convictions, and three years for the use of a weapon while under disability conviction. The court also sentenced appellant to serve an additional three years of incarceration for using a firearm in one of his aggravated robbery convictions. The court held that appellant was to serve the sentences consecutively. Appellant appeals his convictions and sentences and presents the following five assignments of error:
FIRST ASSIGNMENT OF ERROR:
 THE TRIAL COURT COMMITTED PLAIN ERROR AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BY FAILING TO GIVE AN ADEQUATE LIMITING INSTRUCTION REGARDING THE POLYGRAPH EVIDENCE.
 SECOND ASSIGNMENT OF ERROR:
 THE TRIAL COURT COMMITTED PLAIN ERROR AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BY PERMITTING THE GOVERNMENT'S POLYGRAPH EXPERT TO GIVE AN OPINION THAT APPELLANT WAS BEING DECEPTIVE WHEN HE DENIED COMMITTING THE CHARGED OFFENSES.
 THIRD ASSIGNMENT OF ERROR:
 THE PROSECUTING ATTORNEY'S REMARKS DURING TRIAL AND CLOSING ARGUMENT CONSTITUTED PROSECUTORIAL MISCONDUCT, DEPRIVED APPELLANT OF A FAIR TRIAL, AND VIOLATED APPELLANT'S RIGHTS AS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.
ASSIGNMENT OF ERROR:
 TRIAL COUNSEL'S FAILURE TO OBJECT TO REPEATED AND PERVASIVE PROSECUTORIAL MISCONDUCT, IMPROPER JURY INSTRUCTIONS, AND IMPROPER POLYGRAPH OPINION CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL AND THUS DEPRIVED APPELLANT OF HIS RIGHTS AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.
 FIFTH ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BY IMPOSING TWO SEPARATE THREE-YEAR SENTENCES OF ACTUAL INCARCERATION PURSUANT TO R.C. 2929.71, WHERE THE CONDUCT AROSE OUT OF ONE ACT OR TRANSACTION.
Appellant argues in his first assignment of error that the trial court failed to give an adequate limiting instruction regarding the use of polygraph evidence. Appellant claims that based upon State v. Souel (1978), 53 Ohio St.2d 123, and State v.Lascola (1988), 61 Ohio App.3d 228, we are required to reverse appellant's convictions. We disagree.
When determining if there were errors in a jury instruction, a reviewing court must consider the jury charge as a whole and must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights. State v. Crane (July 7, 1997), Butler App. No. CA96-12-257, unreported, following Kokitka v. Ford Motor Co.
(1995), 73 Ohio St.3d 89, 93. Concerning polygraph evidence being introduced, the Ohio Supreme Court has stated:
 The trial court cannot admit the results of a polygraph test into evidence simply at an accused's request. Such results are admissible only if both the prosecution and defense jointly stipulate that an accused will take a polygraph test and that the results will be admissible. State v. Jamison (1990), 49 Ohio St.3d 182, 190, certiorari denied (1990), 498 U.S. 881, 111 S.Ct. 228. (Citations omitted.)
The reason for this is that such tests have not attained scientific or judicial acceptance as an accurate and reliable means of ascertaining truth or deception. State v. Purdon (Nov. 10, 1997), Brown App. No. CA97-03-009, unreported, following Statev. Rowe (1990), 68 Ohio App.3d 595, 609.
In Souel, the Ohio Supreme Court held:
 The results of a polygraphic examination are admissible in evidence in a criminal trial for purposes of corroboration or impeachment, provided that the following conditions are observed:
 (1) The prosecuting attorney, defendant and his counsel must sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state.
 (2) Notwithstanding the stipulation, the admissibility of the test results is subject to the discretion of the trial judge, and if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept such evidence.
 (3) If the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross-examine the examiner respecting:
(a) the examiner's qualifications and training;
 (b) the conditions under which the test was administered;
 (c) the limitations of and possibilities for error in the technique of polygraphic interrogation; and,
 (d) at the discretion of the trial judge, any other matter deemed pertinent to the inquiry.
 (4) If such evidence is admitted the trial judge should instruct the jury to the effect that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged, and that it is for the jurors to determine what weight and effect such testimony should be given. Souel, syllabus.
In the present case, the parties agreed to admit the results of a polygraph test to be administered by a person designated by the prosecution. Appellant and his counsel signed the agreement. On March 2, 1999, Brian Reigle, an employee of the Ohio State Highway Patrol, administered the test. Reigle testified that while he was administering the polygraph test to appellant, he noticed that appellant was practicing "controlled breathing." Reigle stated that controlled breathing is a countermeasure used to defeat the results of a polygraph test and that "when they do that, I don't even try to score and analyze the charts. They do that for one reason, to cover deception." He further testified that because of the countermeasures employed by appellant, his opinion was that appellant "was deceptive as to being at the scene of the crime, knowing for sure who shot David Parker."
Reigle's testimony differs from typical polygraph examiners' testimony in that his opinion concerning appellant's truthfulness was not based upon the results of the polygraph examination but, instead, upon appellant's actions to change the results of the polygraph examination. Appellant's counsel was given the opportunity to cross-examine Reigle. Appellant's counsel also called Charles R. Honts to testify as an expert on polygraphs and countermeasures. After examining the charts generated by appellant's polygraph examination, Honts stated that appellant's controlled breathing did not affect the examination results and opined that appellant was telling the truth when he answered negatively to the question "[d]id you shoot David Parker?"
The record does not show that the trial judge instructed the jury "that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged." However, the trial judge did state:
 You must decide what weight, if any, should be given to the testimony of an expert. You may consider the expert's skill, experience, knowledge, veracity, familiarity with the facts of this case, and the usual rules for testing credibility and determining the weight to give to testimony.
"A presumption exists that a jury has followed the instructions given to it by the trial court." State v. Wu (May 27, 1997), Butler App. No. CA96-08-161, unreported, following State v. Murphy
(1992), 65 Ohio St.3d 554, 584.
A review of the record does not show that appellant was unfairly prejudiced by evidence being introduced relating to the polygraph examination. The jury instruction from Souel was not required for Reigle's testimony because he testified that he did not score the polygraph results. The only testimony given concerning the results of the polygraph test was given by appellant's expert witness.
We also note that Crim.R. 30(A) states that on appeal "a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict." Appellant's counsel did not object to the admission of evidence relating to the polygraph examination. Instead, the polygraph evidence was actually beneficial to appellant because appellant's counsel used Honts's testimony concerning the polygraph results in an effort to show that appellant was innocent. Accordingly, we find that appellant's constitutional rights were not violated and appellant's first assignment of error is overruled.
Appellant argues in his second assignment of error that the court erred by permitting Reigle to state that he believed appellant was being deceptive during the polygraph examination. "Reviewing courts should be slow to interfere with a court's determination concerning the admissibility of evidence unless the court has clearly abused its discretion and the party has been materially prejudiced thereby." State v. Drake (Dec. 17, 1998), Franklin App. No. 98AP-448, unreported.
In the present case, Reigle testified that appellant "was deceptive as to being at the scene of the crime, knowing for sure who shot David Parker." However, appellant's counsel did not object to Reigle's testimony. "The failure to object constitutes a waiver of any claim of error but for plain error." State v.Smith (1997), 80 Ohio St.3d 89, 115, certiorari denied (1998),523 U.S. 1125, 118 S.Ct. 1811. "Plain error consists of an obvious error or defect in the trial proceedings that affects a substantial right [and] * * * reversal is warranted only if the outcome of the trial clearly would have been different absent the error." State v. Lindsey (2000), 87 Ohio St.3d 479, 482.
A review of the record shows that even if Reigle's testimony that appellant was deceptive during the polygraph examination should have been disallowed, a reversal is not warranted because when considering the other evidence that was presented, appellant cannot show that the outcome of the trial would have been clearly different. Reigle's testimony only helped to support Parker's testimony that appellant shot him. Parker, Josche, and Parker's roommate all testified that the robbery took approximately one minute. Parker testified that he was able to see appellant during the robbery and that when he was shown a police photo lineup, he was "a hundred percent sure about the face." Parker also testified that the first time he saw appellant after the robbery, he "didn't have any — any doubts whatsoever" that appellant was the robber. When asked "[t]o this day, do you have any doubt that you have identified the right person?" Parker answered "[n]o."
"The weight to be given the evidence and the credibility of the witnesses are primarily issues to be decided by the trier of fact." State v. Burdine-Justice (1998), 125 Ohio App.3d 707,716. The trier of fact has the benefit of seeing and hearing the witnesses testify, and is in the best position to determine the facts of the case. In re Good (1997), 118 Ohio App.3d 371, 377. A review of the trial transcript shows that the jury chose to believe Parker's identification of appellant, and that this was the single most important issue of the trial. Therefore, we find that appellant has not demonstrated that the trial court committed plain error by allowing Reigle to testify that appellant was deceptive during the polygraph examination. Appellant's second assignment of error is overruled.
Appellant argues in his third assignment of error that the prosecutor engaged in several instances of misconduct during closing arguments. "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantive rights of the accused." Statev. Moore (1998), 81 Ohio St.3d 22, 23. Prosecutors are given wide latitude in closing argument. State v. Davis (1996), 76 Ohio St.3d 107,119. The closing argument must be viewed in its entirety to determine if appellant was prejudiced. State v.Ballew (1996), 76 Ohio St.3d 244, 255, certiorari denied (1997),519 U.S. 1065, 117 S.Ct. 704. Failure to object to alleged improper statements made by a prosecutor during closing arguments waives all but plain error. Id.
We first note that a review of the record shows that appellant's counsel did not object to any of the comments made by the prosecution that appellant claims were considered misconduct. When considering the evidence presented against appellant, especially Parker's testimony that he was one hundred percent sure that appellant was the shooter, we find that appellant was not so materially prejudiced by the prosecutor's statements to find that plain error occurred. Additionally, a review of the prosecutor's comments shows that with the exception of the prosecutor's mischaracterization that the jurors had to believe appellant's statements "beyond a reasonable doubt" to find him not guilty,[1] none of the prosecution's comments were improper.
For example, appellant claims that the prosecution's statement that appellant should have come forward with evidence improperly implies that appellant did not have the right to remain silent. However, appellant did not remain silent while being interviewed by the police. Officer Patrick Dorn of the Columbus Police Department testified that appellant had provided an alibi that he was in New York at the time of the robbery. Dorn also testified that appellant gave him the name of a construction company he was supposedly working for at the time of the robbery, and offered to provide pay stubs in order to prove that he was working for that company. Dorn testified that appellant never provided the pay stubs and that he was unable to verify appellant's employment at the construction company. The prosecution commented that when "you say you're going to do something and you're in this much trouble, wouldn't you do it?" As stated by another appellate court:
 Generally, a defendant's post-arrest silence is inadmissible at trial. But when a defendant makes an exculpatory statement to police, he cannot be said to have relied on the Miranda warnings given at the post-arrest police interrogation. Therefore, the prosecutor may comment on any omissions or discrepancies in the defendant's statement. State v. Johnson (May 1, 1998), Hamilton App. No. C-970180, unreported, discretionary appeal not allowed (1998), 82 Ohio St.3d 1481.
Accordingly, we find that the prosecutor properly commented on these facts during closing argument.
Appellant also argues that the prosecution improperly shifted the burden of proof when, during closing arguments, the prosecutor stated: "Why didn't he call the police? He's the only one on the hot seat." However, a review of the complete closing argument shows that the prosecution was commenting on the "coincidence" presented by appellant that after he supposedly moved back to Columbus, Ohio from New York, he met "the people who know something about this crime." The prosecutor characterized the "odds that after you're charged with a serious crime, you'd by luck meet the people that really did it" as an "astronomical coincidence."
Appellant also claims that the prosecution's cross-examination of his expert witness was improper. A review of the record does not show that the prosecution attempted to present evidence concerning an Ohio Supreme Court ruling or to improperly present character evidence of appellant. Additionally, it was proper for the prosecution to state during closing arguments that "through all the testimony, he lies to you." Even though appellant did not testify, the statements he made to the police were allowed to be considered by the jury. If appellant's statements that he was not present during the shooting were proven true, then appellant could not be convicted of the crimes he was charged with. Therefore, it was necessary for the prosecution to demonstrate that appellant was untruthful when he denied being at the scene of the shooting.
Accordingly, after having reviewed the complete record and after having considered appellant's arguments, we find that appellant has not demonstrated that his constitutional rights were abridged because of the conduct of the prosecution. Appellant's third assignment of error is overruled.
Appellant argues in his fourth assignment of error that his trial counsel's failure to object to "repeated and pervasive prosecutorial misconduct, improper jury instructions, and improper polygraph opinion" constituted ineffective assistance of counsel. "Reversal of a conviction on the grounds of ineffective assistance of counsel requires a showing, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive defendant of a fair trial." Lindsey, at 489, following Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064.
"The burden rests upon appellant to show how counsel breached the duty to provide reasonable representation." Statev. Heer (Sept. 24, 1998), Franklin App. No. 97APA12-1670, unreported, dismissed (1999), 84 Ohio St.3d 1501. "Appellant must show that he was prejudiced by counsel's conduct, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."State v. Dillbeck (Dec. 14, 1999), Franklin App. No. 99AP-399, unreported. Questions involving the effectiveness of counsel should be viewed in light of the compelling evidence against the defendant. Lester, at 5. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." State v. Loza (1994),71 Ohio St.3d 61, 83, certiorari denied (1995), 514 U.S. 1120,115 S.Ct. 1983.
Regarding appellant's claim that his counsel failed to object to misconduct by the prosecution, we have already addressed appellant's arguments concerning alleged prosecutorial misconduct in his third assignment of error. In that assignment, we found that appellant had not demonstrated that his constitutional rights were abridged because of the conduct of the prosecution. Therefore, appellant cannot demonstrate that there was a reasonable probability that the result of the proceedings would have been different even if his trial counsel had objected.
Appellant also claims that his counsel was ineffective for failing to object to the trial court's jury instruction regarding the polygraph results. Appellant argues that the jury should have been instructed that "the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged, and that it is for the jurors to determine what weight and effect such testimony should be given." Souel, syllabus. The purpose of this instruction is to keep juries from giving too much weight to testimony concerning polygraph test results.
A review of the evidence shows that Reigle, the polygraph examiner presented by the prosecution, did not testify concerning the test results. The only witness to testify concerning the results was presented by appellant's trial counsel. Appellant's expert witness stated that appellant was telling the truth when he answered negatively to the question "[d]id you shoot David Parker?" Therefore, it was appellant who benefited from the court failing to give the Souel instruction regarding polygraph test results, and thus appellant cannot claim to be prejudiced by his counsel failing to require this instruction to be given.
Appellant further claims that his trial counsel "was deficient in failing to object to the improper opinion of the government's polygraph expert." Trial tactics that are debatable generally do not constitute a deprivation of effective counsel.State v. Phillips (1995), 74 Ohio St.3d 72, 85, certiorari denied (1996), 517 U.S. 1213, 116 S.Ct. 1835. "[T]rial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel." State v. Gray
(Mar. 28, 2000), Franklin App. No. 99AP-666, unreported. Therefore, we do not find that appellant's trial counsel was deficient for failing to object because this was a debatable trial tactic. Accordingly, appellant's fourth assignment of error is overruled.
Appellant argues in his fifth assignment of error that the trial court erred by imposing two separate three-year sentences pursuant to R.C. 2929.71 where the conduct arose out of one act or transaction. We agree.
Former R.C. 2929.71(B) states:
 If an offender is convicted of, or pleads guilty to, two or more felonies and two or more specifications charging him with having a firearm on or about his person or under his control while committing the felonies, each of the three-year terms of actual incarceration imposed pursuant to this section shall be served consecutively with, and prior to, the life sentences or indefinite terms of imprisonment imposed pursuant to section 2907.02, 2907.12, 2929.02, or 2929.11 of the Revised Code, unless any of the felonies were committed as part of the same act or transaction. If any of the felonies were committed as part of the same act or transaction, only one three-year term of actual incarceration shall be imposed for those offenses, which three-year term shall be served consecutively with, and prior to, the life sentences or indefinite terms of imprisonment imposed pursuant to section 2907.02, 2907.12, 2929.02, or 2929.11 of the Revised Code.
A transaction, for purposes of R.C. 2929.71(B), is a series of continuous acts bound together by time, space and purpose, and directed toward a single objective. State v. Berry (June 29, 1999), Franklin App. No. 97AP-964, unreported, discretionary appeal not allowed (1999), 87 Ohio St.3d 1430.
In the present case, appellant's two firearm specifications are based upon the same act or transaction. Therefore, pursuant to R.C.2929.71(B), only one three-year term of actual incarceration could be imposed upon appellant. Appellant's fifth assignment of error is sustained.
Accordingly, appellant's first, second, third, and fourth assignments of error are overruled, appellant's fifth assignment of error is sustained, and we remand the matter to the trial court to prepare a sentencing entry that is consistent with R.C. 2929.71(B).
Judgment affirmed in part; reversed in part; cause remanded withinstructions.
 ________________ BROWN, J.
BRYANT and GREY, JJ., concur.
GREY, J., retired, of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Even though the prosecutor's comments concerning the standard of proof were improper, the jury was given proper instructions by the judge on what factors they should consider when deciding the case, and we must assume that the jurors followed the court's instructions. State v. Lester (1998),126 Ohio App.3d 1, 8.