OPINION
{¶ 1} Defendant-appellant, Derek L. Rawls, appeals from the December 30, 2002 judgment of the Franklin County Court of Common Pleas convicting defendant of aggravated assault and sentencing him to 17 months in prison.
 {¶ 2} This case arises from an altercation that occurred on or around July 2, 2002, between defendant and Antonio Searcy. As noted by defendant, the witnesses who testified at trial in this case provided different versions of the facts regarding the altercation and the circumstances surrounding that altercation.
 {¶ 3} Esther Morgan, defendant's girlfriend for 14 years, provided the following testimony at trial. On the evening of July 1, 2002, "[defendant] was running around the house up and down stomping through the house with a butcher knife talking about he going [sic] to kick my ass * * *. He was just going off cussing and yelling for just about almost the whole day and night." (Tr. 173.) Defendant stabbed couches with a butcher knife, pulled the railing for the stairs out of the wall, kicked an air conditioner through a window, and kicked in doors. In sum, "he did a lot of damage in the house." (Tr. 174.) Also, defendant had turned off the utilities to the house. Ms. Morgan was unable to sleep that night. "We stayed up, and we sat in the living room. I told them just to sit still and be quiet. We thought he would leave because he has [a] drug problem." (Tr. 174-175.) Around 5 a.m. the next morning, Ms. Morgan and her children were on her front porch when defendant appeared and was "yelling and hollering." (Tr. 175.) According to Ms. Morgan, defendant got in his van, and it appeared as though defendant was going to ram the porch with his van. Ms. Morgan testified that defendant, from his van, threw a wrench at the porch, causing glass to shatter, while Ms. Morgan and her children remained on the porch.
 {¶ 4} Defendant testified at trial, and he provided the following testimony. According to defendant, the argument on July 1, 2002, with Ms. Morgan, related to defendant's impression that Ms. Morgan was "seeing" his friend, Kevin. (Tr. 237-238.) Defendant denied running around the house damaging items of furniture, stabbing the couch, and knocking the stair rail out of the wall. (Tr. 240.) He stated that Ms. Morgan threw a two-drawer videotape holder at him, causing injury to his wrist, which necessitated medical attention. (Tr. 240-241, 244.) Furthermore, defendant testified that he did not turn off the utilities. (Tr. 240.)
 {¶ 5} Witnesses at trial testified to three visits of defendant at the home of Antonio and Rachel Searcy. First, Mr. Searcy testified that a couple of days prior to the altercation, defendant arrived at Mr. Searcy's house in a van with two other individuals. Mr. Searcy and his wife, as well as Ms. Morgan, were sitting on the front porch of the house. According to Mr. Searcy, defendant said, "Man, I am going to throw some cocktails through this MF house and blow the house up." (Tr. 42.) Ms. Searcy testified that when defendant arrived at her house with the two other individuals he was cursing and referred to Ms. Morgan as "B-I-T-C-H." (Tr. 110.) She also testified that on July 1, 2002, defendant made threats, "Saying if she don't come out that house, he going to blow the house up and kill everybody inside." (Tr. 111.)
 {¶ 6} The second time defendant arrived at the Searcys' home was with an individual called "Slim." Mr. Searcy testified that defendant said, "Where's my wife? * * * Where is that B-I-T-C-H." According to Mr. Searcy, defendant's acquaintance named Slim said to Mr. Searcy, "Man, you need to fight my boy. You need to come to my territory." (Tr. 44-45.) Mr. Searcy also testified that defendant, at this second visit, stated, "Man, I am going to blow up your house and shoot up your house and kill every doggone body in the house." According to Mr. Searcy, as defendant left Mr. Searcy's property, defendant yelled, "I will be back. I will be back." (Tr. 45.)
 {¶ 7} Defendant provided testimony relating to his visit to the Searcys' home when he was with Slim. Defendant testified that when they arrived at the Searcys' home, defendant got out of the van and knocked on the door of the house. Mr. Searcy answered the door, with his wife standing behind him. According to defendant, defendant asked where Ms. Morgan was, and the Searcys told defendant that they had not seen her. (Tr. 247.) Defendant testified that he said, "I know you're bull-shitting because I know she was here. I saw the car." (Tr. 247.) Defendant said, "F all of you's, FU's," and left with Slim. Id.
 {¶ 8} Apparently, the altercation between Mr. Searcy and defendant, which involved the stabbing of Mr. Searcy, occurred during defendant's third visit to the Searcys' home. The circumstances of the altercation are also in dispute. According to Mr. Searcy, he and his wife saw a light in the alley near his home, and they walked toward the light. As they were walking toward the light, defendant "jumped out from behind [Mr. Searcy's] garage." (Tr. 54.) When he jumped out, he was wearing a wig, hat, and trench coat. Mr. Searcy said to defendant, "Man, get off my property." Id. Ms. Searcy testified that when she and her husband investigated the light someone appeared in a disguise. The first thing she saw was a wig, a hat, and a trench coat. (Tr. 114.) According to Ms. Searcy, defendant, whom she recognized even in the "disguise," came at her "like a football player and pushed" her. (Tr. 115.) She also testified that her husband said, "What you doing to my wife?" and then a tussle began between defendant and Mr. Searcy. (Tr. 116.) According to Ms. Searcy, defendant threw a punch, Mr. Searcy then got the two-by-four, and at some point in the fight defendant overpowered Mr. Searcy and was "on top of him." (Tr. 117-118.)
 {¶ 9} Mr. Searcy testified that, defendant, without any provocation, attacked him with a knife and stabbed him multiple times, thereby puncturing his heart and lungs. In defense, Mr. Searcy grabbed a "two-by-four" and hit defendant with the board several times. Mr. Searcy also testified that he provided a different version of the events as they transpired in a taped interview with the police about a week after the incident.
 {¶ 10} Defendant provided his own version of the altercation. After his visit with Slim to the Searcys' home, defendant went home, watched television and took a nap. Defendant testified that, when he got up from his nap, he got in his van and drove to Norwood, searching for Ms. Morgan. When he did not see Ms. Morgan's car, he drove back to Parkwood. Defendant saw an air-conditioner in an alley. Defendant testified that he wanted to obtain a fan from the air-conditioner in the alley and use it in his broken air-conditioner. He dragged the air-conditioner to the side of the van. According to defendant, he wore a wig, hat, and coat in order to look for Ms. Morgan's car without being seen. (Tr. 256.) Defendant testified that he saw Mr. Searcy and asked for his help; Mr. Searcy did not respond. According to defendant, he put the air-conditioner in the van, closed the van's door, and gave Ms. Searcy a hug. Then, according to defendant, "all of a sudden, [a] couple seconds after I gave her a hug, all I know is boom. I got hit with a two-by-four." (Tr. 254.) Defendant testified that he was unable to get in his van and leave the scene because Mr. Searcy was hitting him with a two-by-four. According to defendant, he grabbed a fishing knife under a seat in the van and "started swinging the knife trying to get away from him." (Tr. 261.) Defendant admitted to stabbing Mr. Searcy; however, he alleged self-defense. (Tr. 236-237.) Defendant was arrested at his house.[1]
 {¶ 11} On July 12, 2002, defendant was indicted by the Franklin County Grand Jury on one count of kidnapping, in violation of R.C. 2905.01, and one count of felonious assault, in violation of R.C. 2903.11. In October 2002, defendant was tried before a jury in the Franklin County Court of Common Pleas. At the close of the state's case, the trial court granted defendant's Crim.R. 29 motion to dismiss the kidnapping charge. On October 18, 2002, the jury found defendant guilty of aggravated assault, in violation of R.C. 2903.12, a fourth degree felony. On December 30, 2002, the trial court entered judgment, convicting defendant of aggravated assault and sentencing defendant to 17 months in prison. Defendant appeals from this judgment and assigns the following errors:
ASSIGNMENTS OF ERROR
1. The trial court erred in admitting other acts evidence (TR 159-170, 173-176, 302-303) concerning details of an unrelated fight including disputed claims that Appellant turned off all the utilities in the house (TR 173), that Appellant was running around the house with a butcher knife threatening to kick Esther Morgan's ass (TR 173), that Appellant stabbed couches (TR 174), that Appellant pulled the railing back and forth until it broke (TR 174), that Appellant kicked the air conditioner through the window (TR 174), that Appellant kicked in some doors (TR 174), that Appellant has a drug problem (TR 174-175), that Appellant acted like he was going to ram the front porch with his van (TR 175), that Appellant threw a wrench or something causing the glass at the front porch to shatter while Esther Morgan was present with her children (TR 175), that purportedly took place on July 1, 2002 between Appellant Rawls and Esther Morgan (TR 159-170, 173-175, 177, 302-303) in a trial that concerned a fight between Antonio Searcy and Appellant that took place in the late evening hours of July 2, 2002 when Esther Morgan was not present.
2. The trial court committed plain error in failing to give a limited instruction on other acts evidence (TR 159 to 176), and in not instructing the jury on other acts evidence (TR 363 to 384).
3. The jury's verdict finding appellant guilty of aggravated assault was against the manifest weight of the evidence and not supported by the evidence.
4. Appellant received ineffective assistance of counsel when his trial counsel failed to repeat his objection to other acts evidence, failed to request a limiting instruction on other acts evidence (TR 173 to 176), and failed to request a jury instruction on other acts evidence (TR 363 to 383) when in a self-defense case, the State's witnesses made numerous contradictory statements, the evidence was not overwhelming against Appellant, and the other acts evidence was extremely damaging and made the jury believe that Appellant should be punished because he was a violent and bad person.
 {¶ 12} In his first assignment of error, defendant asserts that the trial court erred in admitting particular other acts evidence, outlined in the assignment of error. In essence, defendant challenges the admission of other acts evidence under Evid.R. 404(B) and the related statute R.C. 2945.59.
 {¶ 13} The parties in this case dispute whether defendant's trial counsel properly objected to the admission of Ms. Morgan's testimony. An objection must comply with Evid.R. 103(A)(1), which provides as follows:
Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent from the context * * *.
 {¶ 14} Prior to Ms. Morgan testifying, defendant's counsel presented an argument to the court that Ms. Morgan's testimony regarding incidents that occurred the day before the stabbing was going to be inadmissible for various reasons. (Tr. 159-170.) The court decided that it would allow Ms. Morgan to testify. (Tr. 170.) Subsequently, Ms. Morgan testified. Defense counsel did not make any contemporaneous objections as to Ms. Morgan's statements regarding defendant's alleged drug problem or the other acts evidence. After two more witnesses testified, defense counsel objected to the admission of Ms. Morgan's testimony. (Tr. 303.) Even assuming, arguendo, that defendant's trial counsel properly objected to Ms. Morgan's testimony, we find no error in the admission of her testimony regarding defendant's other acts or alleged drug problem.
 {¶ 15} As a preliminary matter, we note that defendant has interpreted Ms. Morgan's testimony that defendant has a drug problem as other acts evidence. While her testimony may infer that defendant used drugs (other acts), the testimony regarding a "drug problem" would more aptly be considered character evidence. Subject to certain exceptions, evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion. Evid.R. 404(A). However, such evidence is admissible if it is offered for a different purpose. In this case, Ms. Morgan testified that she and others thought that defendant would leave after he damaged the house "because he has [a] drug problem." (Tr. 175.) We conclude that Ms. Morgan's testimony that defendant has a drug problem was admissible because it was not offered to prove conforming conduct. Thus, we do not find error in the admission of Ms. Morgan's statement concerning defendant's alleged drug problem.
 {¶ 16} We now address the issue of whether the other acts evidence was admissible at trial. "A trial court has broad discretion with respect to the admission or exclusion of evidence, and its decision in such matters will not be reversed on appeal unless the trial court has abused its discretion and material prejudice has resulted therefrom." State v. Hawn
(2000), 138 Ohio App.3d 449, 457. Pursuant to Evid.R. 404(B), the admissibility of other acts evidence is within the sound discretion of the trial court. State v. Matthews (1992),80 Ohio App.3d 409, 415; State v. Jackson, Franklin App. No. 02AP-867, 2003-Ohio-6183, at ¶ 30.
 {¶ 17} Evid.R. 404(B) generally prohibits the admissibility of other acts evidence that is used "to show that the accused committed the crime with which he is now charged." Other acts evidence is not admissible if its sole purpose is to show a defendant's "propensity or inclination" to commit an offense.State v. Harris (Mar. 4, 1999), Cuyahoga App. No. 73921, citingState v. Curry (1975), 43 Ohio St.2d 66, 68. However, Evid.R. 404(B) provides an exception to the general rule prohibiting the admissibility of evidence of other acts. Other acts evidence is admissible if it tends to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B).[2]
 {¶ 18} Under the facts of this case, the admitted other acts evidence, of which defendant complains, was admissible for purposes other than to show conforming conduct. Defendant asserts that his "motive, intent, knowledge, and absence of mistake were not material facts that were in dispute during the trial." (Defendant's reply brief, at 1.) Contrary to defendant's argument, we find that the other acts evidence tended to prove material or consequential facts and was not offered for the sole purpose of showing conforming conduct. In this case, the testimony of Ms. Morgan regarding the fight between defendant and Ms. Morgan that occurred on July 1, 2002, reasonably discloses facts relevant to defendant's motive or purpose. Specifically, Ms. Morgan's testimony regarding defendant's acts on July 1, 2002, as well as testimony regarding defendant's prior visits to the Searcys' home in which defendant was searching for Ms. Morgan, were relevant to why defendant was at the Searcys' on the evening of July 2, 2002, and why he was wearing a disguise. Moreover, considering that defendant asserted self-defense and that provocation was at issue, evidence of defendant's other acts was relevant to whether defendant was at fault in creating the situation that led to the stabbing of Mr. Searcy and whether he acted without provocation. We conclude that the other acts evidence was not offered for the sole purpose of establishing bad character.
 {¶ 19} Other acts evidence, even if admissible under Evid.R. 404(B), must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. See State v.Snyder, Logan App. No. 8-03-04, 2003-Ohio-5134, at ¶ 8; Evid.R. 403(A). Under the facts of this case, the probative value of the other acts evidence, as it related to defendant's motive, was not substantially outweighed by the danger of unfair prejudice. Thus, Evid.R. 403(A) was not a bar to Ms. Morgan's testimony.
 {¶ 20} Based on the foregoing, we find that the trial court did not err in admitting the other acts evidence. Accordingly, defendant's first assignment of error is hereby overruled.
 {¶ 21} By his second assignment of error, defendant asserts that the trial court committed plain error by not giving a limiting instruction on other acts evidence and not instructing the jury on other acts evidence. It has been conceded that defendant did not request a limiting instruction on other acts evidence and did not request a jury instruction on the other acts evidence. Thus, a plain error analysis is necessary.
 {¶ 22} "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). Under this rule, a reviewing court must find three things in order to correct an error that was not properly objected to at trial. First, there must be an error. Second, the error must be an obvious defect in the trial proceedings. Third, the error must have affected substantial rights; that is, the trial court's error must have affected the outcome of the trial. State v. Barnes, 94 Ohio St.3d 21, 27,2002-Ohio-68.
 {¶ 23} Defendant's claim that the trial court committed plain error by not giving a limiting instruction on the other acts evidence is without merit upon consideration of the Ohio Supreme Court's decision in State v. Schaim (1992), 65 Ohio St.3d 51. Apparently, the defendant in Schaim made a similar claim as appellant regarding a limiting instruction on other acts evidence. The court stated as follows:
The defendant also claims that it was plain error for the trial court to fail to give a limiting instruction on the use of other acts evidence, even though it was not requested by the attorney. We decline to adopt this position, as the decision not to request a limiting instruction is sometimes a tactical one, and we do not wish to impose a duty on the trial courts to read this instruction when it is not requested. * * *
Id. at 61, fn. 9. Based on the foregoing, we find that the trial court did not commit plain error by not giving a limiting instruction when the evidence was admitted, or a jury instruction at the close of trial on the other acts evidence admitted at trial. Accordingly, defendant's second assignment of error is overruled.
 {¶ 24} In his third assignment of error, defendant asserts that the jury's verdict was against the manifest weight of the evidence and not supported by the evidence. For purposes of this review, we will consider whether sufficient evidence supports the conviction and whether the conviction is against the manifest weight of the evidence. Based on the following, we find that defendant's conviction was based upon sufficient evidence and was not against the manifest weight of the evidence.
 {¶ 25} A conviction based on insufficient evidence constitutes a denial of due process. State v. Thompkins (1997),78 Ohio St.3d 380, 386; see State v. Scott, 101 Ohio St.3d 31,2004-Ohio-10, at ¶ 31. In determining the sufficiency of the evidence, an appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Whether the evidence is legally sufficient to sustain a verdict is a question of law, not fact. Thompkins, at 386. In light of the evidence admitted at trial, it is clear that any rational trier of fact could have found all the elements of aggravated assault.[3] Most notably, defendant testified that he stabbed Mr. Searcy with a knife. (Tr. 236.) Thus, as a matter of law, there was sufficient evidence to support defendant's conviction of aggravated assault.
 {¶ 26} Because the conviction is supported by sufficient evidence, we must determine whether the conviction was against the manifest weight of the evidence. In Thompkins, at 387, the Ohio Supreme Court has stated as follows:
* * * Weight of the evidence concerns "the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on itseffect in inducing belief."
(Emphasis sic.) Id., quoting Black's Law Dictionary (6 Ed. 1990) 1594.
 {¶ 27} Determinations of credibility and weight of the testimony remain within the province of the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Thompkins, at 387, citing Tibbs v. Florida
(1982), 457 U.S. 31, 42, 102 S.Ct. 2211. In assessing whether a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and ultimately determine "`whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"Thompkins, at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. Furthermore, "`[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Id.
 {¶ 28} As discussed above, defendant admitted to stabbing Mr. Searcy, but claimed that it was in self-defense. In order to establish self-defense, defendant was required to establish, by a preponderance of the evidence, that: (1) he was not at fault in creating the situation giving rise to the affray; (2) he had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) he must not have violated any duty to retreat or avoid the danger. State v. Robbins
(1979), 58 Ohio St.2d 74, paragraph two of the syllabus.
 {¶ 29} Defendant provided testimony relating to his claim of self-defense. As discussed above, defendant testified that Mr. Searcy, without provocation, hit defendant with a two-by-four, while defendant was putting an air conditioner in his van. According to defendant, he attempted to get into the van and leave the scene, but Mr. Searcy continued to swing at him with the two-by-four. Defendant testified that he was in fear for his well-being. Defendant argues that his testimony, if believed, satisfied the requirements of self-defense. While this may be an accurate statement, we must determine whether the conviction was against the manifest weight of the evidence in the entire record, not whether the conviction was manifestly against the testimony of the defendant.
 {¶ 30} According to the testimony of Mr. Searcy, defendant was the aggressor in the altercation, and Mr. Searcy used the two-by-four in self-defense. Ms. Searcy's testimony supported this contention when she testified that Mr. Searcy did not obtain any kind of weapon until after defendant threw a punch. (Tr. 117.)
 {¶ 31} Defendant argues that the state's witnesses lacked credibility because they provided statements that contradicted each other's statements as well as prior recorded statements. Defendant also points out that Mr. Searcy had prior felony convictions for aggravated assault and receiving stolen property. Defendant concludes that, "[i]n resolving issues of credibility, the jury should have found that [defendant] stabbed [Mr. Searcy] in self-defense to prevent further injury from being repeatedly struck by [Mr. Searcy] with a two-by-four." (Defendant's brief, at 27.) We disagree.
 {¶ 32} In State v. Craig (Mar. 23, 2001), Franklin App. No. 99AP-739, this court stated as follows:
"[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly, see [State v.] DeHass
[(1967), 10 Ohio St.2d 230], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236, unreported. It was within the province of the jury to make the credibility decisions in this case. See Statev. Lakes (1964), 120 Ohio App. 213, 217, 201 N.E.2d 809 ("[i]t is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness"). See State v. Harris (1991),73 Ohio App.3d 57, 63, 596 N.E.2d 563 (even though there was reason to doubt the credibility of the prosecution's chief witness, he was not so unbelievable as to render the verdict against the manifest weight).
 {¶ 33} At trial, Mr. Searcy testified to his prior felony convictions for aggravated assault and receiving stolen property. The testimony at trial also indicates that Mr. Searcy did make statements to the police that were inconsistent or contradictory to his statements at trial. While there are reasons to doubt Mr. Searcy's credibility, he was not so unbelievable that no reasonable person could believe his testimony, especially considering he testified at trial that he was sedated by various medications when he talked with the police detectives in the hospital. (Tr. 63-64.) See Harris, supra, at 67.
 {¶ 34} In his brief, defendant outlines alleged inconsistencies in the testimony of other state witnesses. Merely because the state's witnesses provided statements at trial that were allegedly inconsistent with statements made earlier to police or inconsistent among the witnesses, does not mean that the verdict convicting defendant of aggravated assault was against the manifest weight of the evidence. Stated differently, the alleged inconsistencies outlined by defendant in his brief do not render the state's witnesses as so unbelievable that no reasonable person could believe their testimony. Furthermore, the jury verdict convicted defendant of aggravated assault, not felonious assault, which was in the original indictment. Thus, the trier of fact did find that defendant was provoked, but it did not find that defendant had proven self-defense.
 {¶ 35} Considering that the weight to be given to the evidence and the credibility of the witnesses are primarily for the trier of fact, see DeHass, supra, paragraph one of the syllabus, and that there is no indication that the jury lost its way and created a manifest miscarriage of justice, we will not sit as the "thirteenth juror" and disturb the verdict as being against the manifest weight of the evidence. In essence, the jury did not lose its way or create a manifest miscarriage of justice when it did not find that defendant had proven self-defense, especially in light of the testimony of the state's witnesses that contradicted defendant's version of the altercation and the circumstances surrounding that altercation. This is not an exceptional case in which the evidence weighs heavily against the conviction.
 {¶ 36} Based on the foregoing, we find that sufficient evidence supported defendant's conviction for aggravated assault, and the conviction was not against the manifest weight of the evidence. Accordingly, we overrule defendant's third assignment of error.
 {¶ 37} By his fourth assignment of error, defendant asserts that he received ineffective assistance of counsel. Specifically, defendant contends that his trial counsel failed to repeat his objection to the other acts evidence, failed to request a limiting instruction on other acts evidence, and failed to request a jury instruction on other acts evidence.
 {¶ 38} To establish ineffective assistance of counsel, defendant must meet a two-part test. Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052. First, defendant must demonstrate that counsel's performance was deficient. Defendant must show "that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687. This requires a defendant claiming ineffective assistance of counsel to identify specific acts or omissions of counsel that are alleged not to be within the realm of reasonable professional judgment. Id. at 690. A strong presumption exists that counsel's conduct or omissions are within the wide range of reasonable professional assistance. Id. at 689. See, also, State v. Nichols (1996), 116 Ohio App.3d 759, 764
(stating, "[t]here is a strong presumption that licensed attorneys are competent and that the challenged action is the product of sound trial strategy. * * * Even debatable trial tactics do not constitute ineffective assistance of trial counsel."). The defendant must overcome this presumption.Strickland, at 689. Thus, a court must ultimately determine whether, under the circumstances, the acts or omissions were "outside the wide range of professionally competent assistance." Id. at 690.
 {¶ 39} Second, in order to establish ineffective assistance of counsel, defendant must also show that the deficient performance prejudiced the defendant. This requires the defendant to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. More succinctly, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
 {¶ 40} Defendant asserts that if this court concludes that defendant waived his objection to the other acts evidence by not properly objecting to the evidence, then this failure to properly object constituted ineffective assistance of counsel. Considering our resolution of defendant's first assignment of error, we find this assertion to be without merit. Specifically, because we have found that the trial court did not err in admitting the other acts, we also find that, regardless of whether or not defendant's trial counsel properly objected to Ms. Morgan's testimony, trial counsel's actions were within the realm of reasonable professional judgment.
 {¶ 41} Defendant also claims that he received ineffective assistance at trial because his trial counsel failed to request a limiting instruction on other acts evidence, and failed to request a jury instruction on other acts evidence. Defendant cites State v. Dotson (Apr. 28, 1992), Franklin App. No. 91AP-999, as holding that "the defense counsel's failure to request [a limiting] instruction constituted ineffective assistance of counsel." (Defendant's brief, at 29.) This court made no such holding in Dotson.
 {¶ 42} In Dotson, this court found that counsel's performance was deficient because counsel did not object to the admission of the defendant's prior conviction and because no legitimate reason existed for allowing the jury to learn of the prior conviction. See Dotson. This court did not make a finding concerning the counsel's failure to request a limiting instruction. See id. In other words, because this court found that counsel was deficient for not objecting to the prior conviction, the limiting instruction issue became moot. SeeState v. Lawrence, Montgomery App. No. 19059, 2002-Ohio-5533, at ¶ 14, discussing Dotson. We also note that the Ohio Supreme Court, in Schaim, supra, at 61, fn. 9, stated that the decision to request a limiting instruction is sometimes a tactical one. Thus, the case at bar is distinguishable from Dotson because there could have been a tactical reason for his trial counsel to not request an instruction on other acts evidence. For example, trial counsel may have wanted to avoid drawing additional attention to the other acts testimony. Based on the foregoing, we conclude that defendant's trial counsel's performance was not deficient.
 {¶ 43} Because we have found that defendant has made an insufficient showing that defendant's trial counsel's performance was deficient, we need not address the second prong of the two-part Strickland test. See Strickland, at 697. Based on the foregoing, we find that defendant's claim that trial counsel provided ineffective assistance at trial by not repeating his objection to other acts evidence or requesting a limiting instruction on other acts evidence is without merit. Accordingly, we overrule defendant's fourth assignment of error.
 {¶ 44} Having overruled defendant's four assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Watson and Sadler, JJ., concur.
[1] We recognize that other witnesses testified at trial. However, a discussion of the testimony of these individuals is unnecessary for our disposition of this case.
[2] This list of "other purposes" is not exhaustive; it is illustrative. See Evid.R. 404(B).
[3] {¶ a} R.C. 2903.12 provides as follows:
{¶ b} "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:
{¶ c} "(1) Cause serious physical harm to another * * *
{¶ d} "(2) Cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.
{¶ e} "(B) Whoever violates this section is guilty of aggravated assault, a felony of the fourth degree."
{¶ f} We note that the elements of felonious assault are identical to the elements for aggravated assault, save aggravated assault's mitigating element of provocation. Compare R.C. 2903.11
with 2903.12.