OPINION
{¶ 1} Appellant, Thomas M. Moore ("appellant"), filed this appeal from a judgment by the Franklin County Court of Common Pleas convicting him of one count of burglary in violation of R.C. 2911.12 and one count of theft in violation of R.C. 2913.02. For the reasons that follow, we affirm the trial court's judgment. *Page 2 
 {¶ 2} Until a few days before September 22, 2006, appellant resided at 7379 Fall Creek Lane in Columbus with Jamison Tyndall ("Tyndall") and Jeff Stiffler ("Stiffler"). The three had been sharing the apartment at that address for six to eight months. Tyndall's father owned the apartment and allowed Tyndall to live there without a formal lease. Appellant and Stiffler contributed toward rent and utilities. Appellant and Stiffler had a single key to the apartment that they shared. At some point, Tyndall began to separately lock the door to his bedroom, with the key shared by appellant and Stiffler being unable to unlock that door.
 {¶ 3} Tyndall discovered that appellant and Stiffler were planning to move to a different apartment a short distance away from the Fall Creek Lane address. Tyndall then ordered appellant and Stiffler to move immediately, and the two complied. Tyndall testified that when he asked appellant and Stiffler to vacate the apartment, he got the key that had been shared by them back.
 {¶ 4} A few days later, on September 22, 2006, Tyndall returned to the apartment at approximately 9:00 p.m. Tyndall found papers scattered around the floor of the living room that were normally stored in his separately secured bedroom. In addition, trash from a trash can had been poured out on the floor of the kitchen. The trash can itself, which Tyndall described as a large green trash can with two wheels, had been removed from the apartment and could not be found. A camera that was kept in one of the kitchen cabinets had been taken, and a portable DVD player had been taken from Tyndall's bedroom closet. A Playstation 2, a laptop computer, and other property had also been taken from the living room. *Page 3 
 {¶ 5} Neither the front nor rear doors of the apartment had been forced open. A window near the rear door had been broken. Upon checking the rear of the apartment, Tyndall saw tracks that he believed matched the trash can that had been taken in the wet grass. The tracks led from Tyndall's apartment to the apartment into which appellant and Stiffler had moved.
 {¶ 6} Susan Dillinger, Tyndall's neighbor, testified regarding an encounter she had with appellant on the day in question. Dillinger testified that while taking some trash from her apartment, she saw appellant outside the rear of Tyndall's apartment, and the two engaged in some conversation. Dillinger stated that appellant was pushing a large green trash can with wheels that was filled to approximately six inches below the top with items she could not see because they were covered with a green bag.
 {¶ 7} Officer Michael Stevens of the Columbus Police Department also testified. He stated that he was dispatched to Tyndall's apartment to take the report regarding the break-in at the apartment. Officer Stevens confirmed Tyndall's testimony regarding the tracks in the grass leading from Tyndall's apartment to the apartment to which appellant and Stiffler had moved. He also testified that the hole in the window near the rear door could not have been the means by which the apartment had been entered because it was too small and the door could not have been unlocked through the broken glass. Thus, Officer Stevens' conclusion was that the apartment had to have been entered by someone using a key. Officer Stevens then interviewed appellant and Stiffler, each of whom denied any involvement.
 {¶ 8} Appellant testified on his own behalf. He stated that he and Stiffler had decided to move out of the apartment due to concerns about Tyndall's temper. He also *Page 4 
testified that he believed there were other people who had lived in the apartment previously who had keys. He denied any involvement in the break-in at Tyndall's apartment, but did admit that he had approached Tyndall's apartment on the day in question because he was attempting to repay Tyndall some money owed. Appellant stated that when he approached the apartment and saw that Tyndall's car was not parked outside, he left the area.
 {¶ 9} Appellant was indicted on one count of burglary in violation of R.C. 2911.12, a felony of the second degree, and one count of theft in violation of R.C. 2913.02, a felony of the fifth degree. The case proceeded to a jury trial, after which appellant was convicted on both counts. Upon taking the verdicts, the court discovered that the jury had failed to sign the separate verdict form on the theft count regarding the value of the property taken. Initially, the trial court proposed sending the jury for further deliberations regarding the value of the property, but instead, over appellant's objection, polled each of the jurors individually regarding that issue. Each of the jurors stated the finding that the value of the property was more than $250, but less than $5,000. The court thus accepted the jury's finding of guilt on the theft count as the fifth-degree felony form of the offense.
 {¶ 10} The court imposed a sentence of two years on the burglary count and 12 months on the theft count, with the sentences to be served concurrently. The court suspended the entire sentence for a three-year period of community control.
 {¶ 11} Appellant filed this appeal, alleging as assignments of error:
 FIRST ASSIGNMENT OF ERROR: Defendant Moore's convictions must be reversed with prejudice because they are each predicated upon an impermissible stacking of inferences and therefore fail to satisfy the reasonable doubt standard. *Page 5 
 SECOND ASSIGNMENT OF ERROR: Defendant Moore's convictions are against the manifest weight of the evidence.
 THIRD ASSIGNMENT OF ERROR: The Trial Court erred in limiting defense counsel's cross-examination of the prosecuting witness with regard to alcohol use.
 FOURTH ASSIGNMENT OF ERROR: The Trial Court erred in admitting other acts evidence in violation of Evidence Rule 404.
 FIFTH ASSIGNMENT OF ERROR: Prosecutorial misconduct in closing arguments deprived Defendant Moore of a fair trial.
 SIXTH ASSIGNMENT OF ERROR: The Trial Court erred in accepting an unsigned verdict of conviction.
 SEVENTH ASSIGNMENT OF ERROR: Cumulative error deprived Defendant Moore of a fair trial.
 {¶ 12} In addition, with leave of court, appellant filed a supplemental assignment of error:
 SUPPLEMENTAL ASSIGNMENT OF ERROR: Defendant Moore's burglary conviction must be reversed because the indictment returned against him failed to allege the required mental state.
 {¶ 13} In his first assignment of error, appellant argues that the evidence offered at trial required the jury to make too many impermissible inferences in order to convict appellant. Specifically, appellant argues that the evidence required the jury to infer: (1) that appellant made and used a copy of the key he had returned to Tyndall to get into the apartment, (2) that the green trash can Dillinger saw appellant pushing was the same trash can Tyndall reported stolen from his apartment, and (3) that the property taken from Tyndall's apartment was in the trash can. *Page 6 
 {¶ 14} Appellant's first assignment of error is essentially a claim that the evidence was insufficient to support his convictions. When reviewing the sufficiency of the evidence supporting a criminal conviction, an appellate court must examine the evidence submitted at trial to determine whether such evidence, if believed, would convince an average person of the defendant's guilt beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at paragraph two of the syllabus. See, also, Jackson v. Virginia (1979),443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 15} This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172,20 OBR 215, 485 N.E.2d 717. Rather, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."Jackson, supra, at 319. Accordingly, the reviewing court does not substitute its judgment for that of the fact finder. Jenks, supra, at 279.
 {¶ 16} In count one of the indictment, appellant was charged with burglary in violation of R.C. 2911.12, which provides, in relevant part, that no person shall, "[trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]" In count two of *Page 7 
the indictment, appellant was charged with theft in violation of R.C. 2913.02, which provides, in relevant part, that, "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: * * * [w]ithout the consent of the owner or person authorized to give consent; * * * [b]eyond the scope of the express or implied consent of the owner or person authorized to give consent; * * * [b]y deception[.]"
 {¶ 17} Appellant argues that the evidence was insufficient to support his convictions because the jury was required to stack inferences in order to reach the conclusion that appellant had committed burglary and theft as charged in the indictment. Generally, a trier of fact may not draw an inference based entirely on another inference, unsupported by any additional facts or other inferences based on other facts. State v.Cowans, 87 Ohio St.3d 68, 1999-Ohio-250, 717 N.E.2d 298, quotingHurt v. Charles J. Rogers Transp. Co. (1955), 164 Ohio St. 329,58 O.O. 122, 130 N.E.2d 820. However, the trier of fact may draw parallel inferences, which are inferences drawn in part from other inferences and in part from other facts. Id.
 {¶ 18} In this case, the evidence established that tracks could be seen in the wet grass between Tyndall's apartment and appellant's apartment, that appellant was seen pushing a wheeled trash can from the area behind Tyndall's apartment, and that the trash can was filled nearly to the top. In addition, the evidence established that entry to Tyndall's apartment was made by a key, rather than by force, and that appellant at one time had access to a key to Tyndall's apartment. Finally, Tyndall testified that the person who took some of the property from his apartment would have to have had prior knowledge of its location in his apartment. *Page 8 
 {¶ 19} Given this evidence, the jury was not required to stack inferences in order to convict appellant. Instead, the individual pieces of evidence offered supported the making of parallel inferences from which the jury could have concluded that appellant was the person who entered Tyndall's apartment and removed Tyndall's property. Viewed in a light most favorable to the state, the evidence offered was sufficient to support appellant's convictions for burglary.
 {¶ 20} We note that in his reply brief, appellant, for the first time, raises as an argument that his conviction for burglary should be reversed because the evidence offered at trial was insufficient as to the "present or likely to be present" element. Generally, appellate courts will not address arguments raised for the first time in a reply brief. Stonehenge Condominium Assoc. v. Davis, Franklin App. No. 04AP-1103, 2005-Ohio-4637. Consequently, we decline to address appellant's argument regarding the "present or likely to be present" element of the burglary charge against him.
 {¶ 21} Consequently, appellant's first assignment of error is overruled.
 {¶ 22} In his second assignment of error, appellant argues that his convictions are against the manifest weight of the evidence. In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. However, in engaging in this weighing, the appellate court must bear in mind the fact finder's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass *Page 9 
(1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, at paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, supra at 387.
 {¶ 23} Appellant presents a number of arguments in support of his contention that his convictions are against the manifest weight of the evidence. First, appellant repeats his argument that the convictions were not supported by sufficient evidence. Appellant also argues that the evidence supported the conclusion that one of the many houseguests Tyndall had in his apartment, or one of his previous roommates, could have entered the apartment and taken the property. Next, appellant argues that the tracks leading from Tyndall's apartment to his apartment could have been placed there by the real perpetrator in order to place the blame on him, or that Dillinger's recollection of seeing him with the trash can may have been faulty. Finally, appellant argues that the only testimony regarding the value of the property was Tyndall's, and that Tyndall's testimony on that point should not be viewed as credible.
 {¶ 24} However, each of these issues was before the jury at least implicitly, if not explicitly. Given the jury's superior position to evaluate the demeanor and credibility of the witnesses, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed. Accordingly, appellant's second assignment of error is overruled.
 {¶ 25} In his third assignment of error, appellant argues that the trial court erred in limiting his cross-examination of Tyndall regarding Tyndall's alcohol use. Tyndall testified that on the night in question, instead of coming straight home from work, he met an *Page 10 
acquaintance for drinks. In response to questions on cross-examination, Tyndall testified that he sometimes drinks immoderately at home. Appellant's counsel then asked Tyndall whether he ever drinks immoderately while driving around. The state objected, and the trial court sustained the objection. Appellant's counsel then asked Tyndall if he always drank in moderation when not at home. The state objected, and the trial court held a sidebar conference. At the sidebar conference, appellant's counsel argued that he should be allowed to impeach Tyndall with evidence that he had been charged with operating a motor vehicle while under the influence of alcohol ("OVI").[1] The trial court sustained the state's objection, finding that there was no evidence that the OVI charge was closely connected in time to the incident in question, and the charge was therefore irrelevant.
 {¶ 26} Questions regarding the admission of evidence lie within the broad discretion of the trial court, and will not be disturbed absent an abuse of discretion. State v. Conway, 109 Ohio St.3d 412,2006-Ohio-2815, 848 N.E.2d 810. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.
 {¶ 27} Appellant argues that the trial court's decision to exclude evidence regarding the OVI charge implicates his rights under the Confrontation Clauses of the United States and Ohio Constitutions. TheSixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution guarantee criminal defendants the right to confront witnesses against them at trial. State v. Handa, Athens App. No. 07CA26, 2008-Ohio-3754. However, the right to confront witnesses is not *Page 11 
unlimited, as trial courts retain wide latitude to place reasonable limits on cross-examination based on a wide range of concerns, including concerns about confusion of issues and interrogation that is only marginally relevant. Id., citing Delaware v. Van Arsdall (1986),475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674. While the Confrontation Clause guarantees a defendant the opportunity for cross-examination, it does not guarantee cross-examination to whatever extent a defendant wishes.Delaware v. Fensterer (1985), 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15. Thus, while appellant's rights under the Confrontation Clauses are implicated, the trial court's decision regarding the scope of allowable cross-examination is subject to review under the abuse of discretion standard. Handa, supra.
 {¶ 28} In this case, we cannot say that the trial court abused its discretion in excluding testimony regarding Tyndall's OVI charge. There is no question that there was no relation in time between the alcohol use that resulted in the OVI charge and the date of the incident that resulted in the charges against appellant, so the OVI charge could not have had a bearing on Tyndall's competence to serve as a witness. Furthermore, although the OVI charge may have provided some basis to impeach Tyndall's testimony regarding differences in his alcohol use at home versus away from home, this would have constituted impeachment on a collateral matter, and the trial court therefore did not abuse its discretion in excluding the evidence on the grounds of relevance.
 {¶ 29} Consequently, appellant's third assignment of error is overruled.
 {¶ 30} In his fourth assignment of error, appellant argues that the trial court erred in allowing evidence of "other acts" to be introduced. On redirect examination, the state elicited testimony from Tyndall, without objection from appellant, that about a month prior *Page 12 
to appellant and Stiffler moving out, he had placed a lock on the door of his bedroom because he had started to distrust his roommates. The state then asked whether Tyndall had noticed anything missing from his bedroom prior to placing the lock on the door. Appellant's counsel objected, and a sidebar conference was held. At sidebar, the state asserted that the question would be withdrawn.
 {¶ 31} Back on the record, the following exchange occurred:
 Q. Mr. Tyndall, let me ask you this: Prior to installing a lock on your bedroom door, how would anyone in your house gain entrance into your bedroom?
 A. Just walk right in.
 Q. Okay. There was nothing stopping anyone from entering your bedroom?
 A. No.
 Q. And do you have any way of knowing if anyone would have ever went into your bedroom while you were at work during the day?
 A. Yeah. I keep my bedroom a certain way, you know. I'd know if something was out of place, I guess.
 Q. All right. Did you ever notice if anything was out of place prior to you installing the lock in your bedroom?
 MR. SCHOPIS: Here we go.
 THE COURT: Is there an objection?
 MR. SCHOPIS: Yes.
 THE COURT: I'm going to overrule the objection at this point.
 MR. HUGHES: You may answer the question.
 THE COURT: Answer the question if you know. *Page 13 
 BY MR. HUGHES:
 Q. If you know, prior to putting the lock on your door if you ever came home and noticed something out of particular place as you described.
 A. Yes.
Tr., 86-87.
 {¶ 32} Evid. R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Under the rule, evidence of "other acts" is not admissible if its sole purpose is to show that the defendant committed the crimes charged, but is admissible if it is offered for some other valid purpose. State v. Rawls, Franklin App. No. 03AP-41, 2004-Ohio-836. A trial court's decision regarding admissibility of other acts is subject to review for abuse of discretion. Id.
 {¶ 33} In this case, Tyndall's testimony regarding his decision to place a lock on his bedroom door based on his belief that items had been found out of place in his bedroom was not offered for the purpose of proving that appellant was guilty of the crimes charged. Tyndall testified to his belief that in order for the portable DVD player to be taken from his bedroom closet, the person who took it had to have been familiar with where the DVD player could be found. Thus, the testimony regarding Tyndall's placement of the lock on his bedroom door constituted evidence that appellant would have had the opportunity to make himself aware of where Tyndall's property could be found. In addition, testimony was offered that police investigators did not dust Tyndall's *Page 14 
bedroom for fingerprints. Evidence that appellant could have been in the bedroom prior to Tyndall's placement of the lock on the door provided an explanation for why the investigators would have declined to dust the room for appellant's fingerprints.
 {¶ 34} We cannot say that the trial court abused its discretion in concluding that the evidence was offered for a valid purpose under Evid. R. 404(B). Consequently, appellant's fourth assignment of error is overruled.
 {¶ 35} In his fifth assignment of error, appellant argues that prosecutorial misconduct during closing arguments deprived him of a fair trial. The test for prosecutorial misconduct requires us to consider whether the remarks made were improper and, if so, whether they prejudicially affected the substantive rights of the accused. State v.Were, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263.
 {¶ 36} In this case, the remarks appellant argues deprived him of a fair trial occurred during rebuttal argument. The assistant prosecuting attorney began to tell a story about a garage sale he and his wife had held the previous weekend. Appellant's counsel raised an objection, which was overruled by the trial court.
 {¶ 37} The assistant prosecuting attorney then continued:
 MR. HUGHES: Had a garage sale this weekend. It was on a corner. There's a street that goes this direction and there's an alley that goes this direction. And I'm sitting at my friend's house and we brought a large table, about ten or twelve feet long and filled it full of things to sell: VCR, tapes, books, et cetera. And we sold all kinds of different things. The garage sale ends [at] 3:30, something like that. * * * So we move around to the back yard right here and we left our stuff out front. About 15 minutes later, my wife went out to the front to get something out of the car or find something and everything was gone. We weren't gone but for a few minutes, the eight-foot table, everything that was on there that we didn't sell, *Page 15 
somebody just came by and took. Now that's a short amount of time.
Tr. 225.
 {¶ 38} Appellant's counsel objected, and a sidebar conference was held. At sidebar, appellant's counsel argued that the assistant prosecuting attorney was arguing facts not in evidence. The assistant prosecuting attorney explained that he was using the story as an illustration about drawing inferences based on evidence offered as rebuttal to the closing argument made by appellant's counsel. The trial court stated that the jury would be given an instruction that arguments made by counsel were not to be considered as evidence, and overruled the objection.
 {¶ 39} The assistant prosecuting attorney then continued:
 MR. HUGHES: * * * If the items were here in front of the house and there's an alley and there's a ten or twelve foot table and it's full of items, it would make sense to infer that one person couldn't carry a twelve foot table with a bunch of items on it. That's applying your common sense, I would say.
 And knowing also that if a person is seated here and there's an alley and there's actually a chain link fence where you can quite easily see the distance between you and I and no one comes or goes and no pickup truck drives by with any of the items that were in the front, I think it's within using your common sense to infer that whoever took the items must have remained on the Main Street and didn't, in fact, walk by me. That's not a stretch. That's not outside the realm of a possibility. And that's a fair inference to draw.
Tr. 232.
 {¶ 40} The assistant prosecuting attorney's remarks were not improper. The story about the garage sale was used to provide a reasonable illustration about the use of direct evidence to make reasonable inferences. Furthermore, the jury was properly *Page 16 
instructed that closing arguments made by counsel were not evidence and were not to be considered as such.
 {¶ 41} Consequently, appellant's fifth assignment of error is overruled.
 {¶ 42} In his sixth assignment of error, appellant argues that the trial court erred when it accepted an unsigned verdict form. When the jury returned its verdict, the trial court noted that although the jury had signed the verdict forms for each of the crimes charged, it had not signed the separate verdict form regarding the value of the property taken from Tyndall's apartment. The trial court proposed to send the jury back for further deliberation regarding the value of the property taken. At a sidebar conference, appellant's counsel objected to the court's proposal to return the jury for additional deliberation, arguing that the jury's failure to sign the verdict form regarding the value of the property should result in the theft conviction being treated as a first-degree misdemeanor, the lowest degree for a violation of R.C. 2913.02.
 {¶ 43} The trial court then questioned the jury foreman regarding the lack of signatures on the verdict form regarding the value of the property taken. The foreman stated that the lack of signatures was not the result of a lack of agreement regarding the value of the property, but rather was the result of a lack of understanding that the separate form needed to be signed. The court then polled the individual jurors regarding the value of the property, and each juror stated his or her verdict that the value of the property was more than $500 and less than $5,000.
 {¶ 44} The procedure initially proposed by the trial court — ordering the jury to return for further deliberation — would have been the proper procedure. See State v. Canady (Feb. 5, 1991), Franklin App. No. 89AP-715, 1991 Ohio App. LEXIS 581. By *Page 17 
objecting to the use of that procedure, appellant invited the error he now asserts. Under the invited error doctrine, a party may not take advantage of an error that he himself invited or induced. State v.Robinson, Cuyahoga App. No. 90411, 2008-Ohio-3972.
 {¶ 45} Consequently, appellant's sixth assignment of error is overruled.
 {¶ 46} In his seventh assignment of error, appellant argues that cumulative error in the conduct of the trial had the effect of depriving him of his right to a fair trial. Given our conclusions overruling the other assignments of error asserted, appellant's claim of cumulative error is unavailing.
 {¶ 47} Consequently, appellant's seventh assignment of error is overruled.
 {¶ 48} In his supplemental assignment of error, appellant argues that his burglary conviction must be reversed because the indictment on that charge did not specify a mens rea element, which appellant argues constitutes structural error requiring reversal. Appellant relies on the decision by the Supreme Court of Ohio in State v. Colon,118 Ohio St.3d 26, 2008-Ohio-1624, 885 N.E.2d 917, in which the court held that failure to include the mens rea necessary for commission of an offense may constitute structural error that may not be waived by a defendant's failure to raise the issue with the trial court.
 {¶ 49} Colon involved a defendant charged with robbery in violation of R.C. 2911.02(A)(2), which provides that, "[n]o person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another[.]" The court then considered the mens rea element required for the robbery charge in light of R.C. 2901.21(B), which provides that "[w]hen the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability *Page 18 
for the conduct described in the section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense." The court concluded that since R.C. 2911.02(A)(2) did not specify a mens rea for the "inflict, attempt to inflict, or threaten to inflict" element, the mens rea necessary for a conviction under the statute is recklessness. Id. at ¶ 14.
 {¶ 50} The court concluded that the indictment was defective because it failed to allege recklessness as the mens rea. Id. at ¶ 15. The court then considered the effect of the defective indictment, and concluded that the failure to include the mens rea in the indictment constituted structural error because it "resulted in a lack of notice to the defendant" and "clearly permeated the defendant's entire criminal proceeding." Id. at ¶ 32.
 {¶ 51} In reaching this conclusion, the court considered four facts, in addition to the defect in the indictment itself, as evidence that the failure to include the mens rea in the indictment permeated the entire proceeding: (1) lack of evidence in the record that defendant was on notice that the state was required to prove recklessness; (2) the fact that the state did not argue that defendant's conduct was reckless; (3) the fact that the jury instructions did not include an instruction that the jury was required to find that defendant's conduct was reckless; and (4) the fact that in closing argument, the prosecuting attorney treated the offense as a strict liability offense. Id. at ¶ 30-31. The court then concluded that, because the error amounted to a structural error, the defective indictment was an error that could not have been waived by the defendant's failure to raise the error at the trial court. Id. at ¶ 45. *Page 19 
 {¶ 52} The state asked the court to reconsider its decision inColon. In response, the court issued a decision in which it reiterated its conclusion in Colon, but also clarified the applicability of its decision. The court stated that "[a]pplying structural-error analysis to a defective indictment is appropriate only in rare cases, such asColon I, in which multiple errors at the trial follow the defective indictment. * * * Seldom will a defective indictment have this effect, and therefore, in most defective indictment cases, the court may analyze the error pursuant to Crim. R. 52(B) plain-error analysis. Consistent with our discussion herein, we emphasize that the syllabus in ColonI is confined to the facts in that case." State v. Colon,2008-Ohio-3749, ¶ 8.
 {¶ 53} In this case, appellant was charged with burglary, rather than with robbery. Consequently, this case does not involve the same issue asColon, in which the mens rea for the robbery charge had to be established by reference to the default provision set forth in R.C. 2921.01(B). R.C. 2911.12 includes as one element that the offender act "with purpose to commit in the habitation any criminal offense." In this case, the criminal offense appellant was alleged to have acted with the purpose to commit was theft in violation of R.C. 2913.02. Both the indictment for theft and the jury instructions included the mens rea necessary for a conviction on a charge of theft, which requires that the offender act knowingly. See, also, State v. Gardner, 118 Ohio St.3d 420,2008-Ohio-2787, 889 N.E.2d 995 (state not required to prove purpose to commit a specific criminal offense to support conviction for burglary).
 {¶ 54} Appellant also argues that the indictment in this case was defective because it did not include the mens rea required for the predicate offense of trespassing. Trespass is an element of the offense of aggravated burglary. State v. Wamsley, *Page 20 117 Ohio St.3d 388, 2008-Ohio-1195, 884 N.E.2d 45. Consequently, trespass would also be an element of the lesser included offense of burglary.
 {¶ 55} The Supreme Court of Ohio has held that an indictment that tracks the language of the statute setting forth the charged offense does not have to separately set forth the elements of a predicate offense. State v. Buehner, 110 Ohio St.3d 403, 2006-Ohio-4707,853 N.E.2d 1162. See, also, State v. Murphy (1992), 65 Ohio St.3d 554,605 N.E.2d 884. "The state's failure to list the elements of a predicate offense in the indictment in no way prevents the accused from receiving adequate notice of the charges against him." Buehner, supra, at ¶ 11.
 {¶ 56} In this case, the indictment for burglary tracked the language of R.C. 2911.12, including the identification of trespassing as a predicate offense. Appellant argues that Buehner was overruled by the Supreme Court's decision in Colon. However, while the Colon decision cites Buehner, there is nothing in the decision indicating any attempt to overrule Buehner. Because the burglary indictment in this case properly tracked the statutory language setting forth the charged offense, pursuant to Buehner, the indictment was not defective. Thus, it is not necessary for us to consider whether plain error analysis or theColon structural error analysis applies here.
 {¶ 57} Consequently, appellant's supplemental assignment of error is overruled. Having overruled all of appellant's assignments of error, we affirm the trial court's judgment.
Judgment affirmed.
PETREE and TYACK, JJ., concur.
[1] Appellant argues that Tyndall was convicted of drunk driving, but no record of conviction was proffered. *Page 1